Garry T. ALLEN, Petitioner,

v.

STATE of Oklahoma, Respondent.

No. C–93–1121.

Court of Criminal Appeals of Oklahoma.

Feb. 16, 1996.

Rehearing Denied Oct. 1, 1996.

Bob Mildfelt, Catherine Hammarsten, Assistant Public Defenders, Oklahoma City, Defense Counsel at trial.

Carolyn Merritt, Assistant Public Defender, Oklahoma City, for Appellant on appeal.

Lori Nettleton, Fern Smith, Assistant District Attorneys, Oklahoma City, Prosecutor at trial.

W.A. Drew Edmondson, Attorney General, William L. Humes, Assistant Attorney General, Oklahoma City, for State on appeal.

### OPINION DENYING WRIT OF CERTIORARI

LANE, Judge:

Garry T. Allen pled guilty to First Degree Murder and was sentenced to death in Oklahoma County District Court Case CRF–86–6295. On original appeal judgment was affirmed and the sentence vacated on the grounds the trial court did not consider the sentencing option of life without parole which had gone into effect ten days prior to sentencing. *Allen v. State,* 821 P.2d 371 (Okl. Cr.1991); *See* 21 O.S.Supp.1992, § 701.10(A).

A second sentencing hearing was held, and the trial court again imposed the death sentence. *See* 21 O.S.1991, § 701.10a(1). Allen is now before us on original appeal from this resentencing.

The trial judge found three aggravating factors to death qualify the defendant: (1) the defendant was previously convicted of a felony involving the use or threat of violence to the person; (2) the defendant knowingly created a great risk of death to more than one person; and (3) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1991, §§ 701.12(1), (2) and (7).

We find the evidence is not sufficient to prove beyond a reasonable doubt the defendant created a great risk of death to more than one person. Upon reweighing the mitigating evidence against the remaining aggravating factors, we find the death penalty is factually substantiated and properly imposed. Sentence is affirmed.

## I. FACTS

Allen shot and killed his girl friend, Gail Titsworth, three days after she moved out with their sons, six-year-old Anthony and two year old Adrian. Angry confrontations punctuated those three days, as Allen tried repeatedly to persuade Titsworth to come back to him. Their last argument occurred on November 21, 1986 when Titsworth came to pick up their sons at Beulah's Day Care Center on N.W. 8th Street in Oklahoma City.

Allen confronted Titsworth inside the center, and the two moved to an empty room to argue. Allen left just ahead of Titsworth and the boys. When Titsworth opened the door of her truck, Allen came up behind her and shut it. She opened it again; again he shut it. This argument ended when Allen reached into his sock, pulled out a .38 caliber snubnosed revolver, and shot Titsworth once in the chest. She fell, and he looked under her blouse before walking away.

A day care employee ran to Titsworth to help her into the day care center. Just as she and Titsworth reached the front door, Allen pushed the woman inside and pushed Titsworth down on the outside steps. Allen shot her three times in the back at close range and walked away. He was captured in an alley less than a block away by the police officer who responded to the 911 call.

Because Allen appeals from resentencing, only sentencing issues are before us. These issues are framed by Appellant's brief in chief, his supplemental brief, and the State's responses to each.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant argues he was denied effective assistance of counsel as guaranteed by the Sixth Amendment, because his trial attorney did not present all of the available mitigating evidence. Trial counsel will not be found ineffective unless counsel's conduct so undermined the proper functioning of the adversarial process that the proceeding cannot be relied on as having produced a just result. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Our review begins with the presump-

tion of competent representation and the appellant must carry the burden of demonstrating both deficient performance and resulting prejudice. *Maxwell v. State*, 775 P.2d 818, 820 (Okl.Cr.1989); *Strickland*, 466 .U.S. at 689–91, 104 S.Ct. at 2065–66.

■ Appellant bases his claim on the following omitted evidence: (1) his mental diagnoses of inadequate personality disorder and organic brain damage; (2) the possibility he has Reye's syndrome; (3) the Boley State School at which he stayed for six months has a violent environment; (4) his mother's alcoholism and rejection of him; (5) his drug and alcohol abuse; and (6) his institutionalization for mental illness while in the Navy. Without this evidence, appellant argues, the sentencing proceeding was fundamentally unfair. The State counters by arguing the bulk of this evidence was, in fact, introduced and the rest does not render the sentencing unreliable.

The record shows extensive mitigating evidence was presented by defense expert, Dr. Nelda Ferguson. She testified Allen was raised in poverty and hunger in an unstable family led by an alcoholic mother who rejected him. As a teenager Allen suffered debilitating mood swings which resulted in five or six suicide attempts. He began to abuse alcohol and drugs when he was seventeen or eighteen years old. All of Allen's siblings are alcoholics. Even though Allen's IQ indicates he is bright, he ultimately dropped out of high school after a six month placement in the Boley State School. While serving in the Navy, Allen was hospitalized for psychological problems, and the abuse of alcohol and drugs. He had also been admitted into the Oklahoma City Veteran's Administration hospital for psychological problems.

Dr. Ferguson concluded the appellant was genetically predisposed to mental illness, and diagnosed Allen as having a personality disorder related to schizophrenia. He could not form and keep long-term relationships, he had little impulse control, and drinking greatly exacerbated these problems. Dr. Ferguson's testimony was supported by Allen's parents who testified to mental illness on both sides of the family, and Allen's ex-wife who testified to Allen's inability to control his temper. Allen himself testified he drank whenever possible.

Most of the evidence on which appellant bases this claim was in fact introduced: the maternal rejection; the drug and alcohol abuse; the hospitalization while in the Navy; and the personality disorder. The only challenged evidence not introduced is the possibility Allen suffered from Reye's syndrome, the fact the environment of the Boley State Home was violent, and the specific label of organic brain damage. Given the very thorough mental health evidence presented by Dr. Ferguson, we find beyond a reasonable doubt the omission of this evidence did not undermine the validity of the resentencing hearing.

■ At oral argument appellate counsel argued trial counsel's failure to present Allen's Navy medical records to Dr. Ferguson was further evidence of ineffectiveness. Counsel argued the Navy records would have supported Dr. Ferguson's testimony which otherwise could be discounted by the trial judge.

■ The mere fact more evidence could have been presented is not, in itself, sufficient to support a finding of ineffectiveness. *See Nguyen v. State*, 844 P.2d 176, 179 (Okl. Cr.1992), *cert. denied*, 509 U.S. 908, 113 S.Ct. 3006, 125 L.Ed.2d 697 (1993). Given the fact in this case the evidence of mental and social disability was credible, well developed, and uncontroverted, the omission of previous medical records does not undermine our confidence in the sentencing decision. We find the appellant has failed to carry his burden to show either deficient performance by counsel, or prejudice from the omission of this evidence.

### III. STATEMENTS BY THE TRIAL JUDGE

Three propositions of error are based on the following statement made by the trial judge to explain the process he used to decide on the death sentence:

> Over the weekend, I had the opportunity to review the evidence that was presented during the preceding week. I examined

my trial notes. I took the Court file home with me. I went through that. I also read the Court of Criminal Appeals opinion on reversal and I reviewed the notes I made during the argument of counsel and I did consider all three punishments, life, life without parole and death.

My consideration of these matters over the weekend, as I said, took place at my residence in seclusion in a leisurely and relaxed atmosphere. *I carefully and prayerfully reviewed the facts,* the testimony, the arguments. I was not influenced by passion of prejudice or any other arbitrary factor.

I gave consideration to the pleas for mercy by the parents and the children of Mr. Allen and to those pleas that he made himself.

*I considered what I'm sure would have been the pleas, although unspoken, by Gail Titsworth for justice and those of her family, which also were not presented.*

It's not an easy case, of course, to decide.

Upon consideration of all these various things that I've talked about I do find that the Bill of Particulars has been proven. The Defendant was previously convicted of a felony involving use of or threat of violence to the person. Number two, the Defendant knowingly created a great risk of death to more than one person and I believe there is the existence of a probability that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society.

And, accordingly, I find that the appropriate punishment in this case would be death and I do make that finding with his punishment in this Case CRF–86–6295 should be death. [emphasis added to challenged portions]

■ By considering the decision "prayerfully", appellant argues, the trial judge arbitrarily injected his own religious beliefs in violation of Canon 2 of the Code of Judicial Conduct. 5 O.S.1991, Ch. 1, App. 4. This Canon provides a judge should not allow family, social or other relationships to influence judicial conduct or decision making. *Id.* The State responds with a semantic ar-

gument: "prayerfully" is not necessarily a religious reference, for it has the equally compelling secular meaning of "carefully thorough" or "earnestly".

Trial context weakens the State's position. When Allen testified, he spoke extensively about his faith. He detailed his religious upbringing. He said he now devoted about three hours a day to Bible study and prayer and, if the judge spared his life, he would devote himself to the Lord. We believe the trial judge carefully chose his words to communicate two thoughts: that he had heard Allen's plea in the spirit it was made, and that he, too, had turned to prayer when considering Allen's future.

Be that as it may, in order to win reversal the appellant must show both error and prejudice at trial; not mere conjecture or "vaporous speculation". *Russell v. State,* 560 P.2d 1003, 1004 (Okl.Cr.), *cert. denied,* 431 U.S. 957, 97 S.Ct. 2683, 53 L.Ed.2d 275 (1977). Appellant's bald assertion the trial judge improperly injected his individualized belief structure is considerably weakened by the fact he does not tell us what that belief structure is, and how it harmed him. His argument is also considerably weakened by the strained reliance on Canon 2 which expressly addresses the relationships the judge has with other people.

■ More to the point, we find nothing to suggest the reference to prayer *in itself* injects constitutional infirmity into this sentencing proceeding. It is the allegiance to religious tenets at the expense of following one's oath which would yield a sentence which is constitutionally infirm. *See Rojem v. State,* 753 P.2d 359, 363 (Okl.Cr.), *cert. denied,* 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988); *Coleman v. State,* 670 P.2d 596, 597 (Okl.Cr.1983); *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Appellant's mere speculation grasps at straws, is unsupported by the record, and does not persuade. The record is explicitly clear; the trial court followed the law.

■ The next two arguments address the trial court's consideration of unspoken pleas

for justice by the victim and her family. Appellant argues the trial court erred twice: first by being influenced improperly by sympathy for the victim, and then by going outside the record to receive this improper influence.

Appellant cites no direct support for his first position, but argues by analogy from cases in which prosecutors committed reversible error by evoking improper juror sympathy for the victim. Relying on *Mitchell v. State*, 884 P.2d 1186, 1205 (Okl.Cr.); *cert. denied*, —— U.S. ——, 116 S.Ct. 95, 133 L.Ed.2d 50 (1994); *Long v. State*, 883 P.2d 167, 177 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1702, 131 L.Ed.2d 564 (1995); and *Carter v. State*, 879 P.2d 1234, 1253 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1149, 130 L.Ed.2d 1107 (1995) the State responds by arguing a prosecutor may ask the jury for justice, and the trial court did nothing more than consider pleas for justice from both sides. The State bolsters its argument with the prosecutor's statement in closing which was made without objection:

> The Defendant has his mother. He has his father. He has Chandra [His daughter].
>
> Gail's mother and father and brothers and sisters and her children don't have her any more. They didn't get an opportunity to beg for Gail's life, although Gail did. She begged for her life. She begged the Defendant to let her live. . . .
>
> The defendant sat there in that chair, six years after he murdered Gail and he asked you to spare his life. What Gail would have given for those six years with Tony and Adrian, her mother and father and her sisters and brothers. . . .

■ The Eighth and Fourteenth Amendments require a sentence of death to be based on reason, not caprice, emotion, or other arbitrary factor. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1989). As evidenced by the acceptance of victim impact evidence at sentencing, it is not sympathy for the victim *per se*, but sympathy that overcomes reason which is constitutionally unacceptable. *See Neill v. State*, 896 P.2d 537, 553–54 (Okl.Cr. 1994); 22 O.S.Supp.1992, §§ 984, 984.1 and 991a.

Nothing in the record supports Allen's allegation the trial judge allowed sympathy to overcome his reason. In fact, the trial court articulated quite clearly the rational basis for his sentencing decision. There is no error here.

The final argument based on the judge's statement is that the trial judge improperly went outside the record to consider these pleas for justice. The State relies again on the prosecutor's statement in closing to argue. the trial court did not go outside the record, but acknowledged the prosecutor's plea for justice. We agree. Acknowledgement of counsel's argument is not error. *See Mitchell*, 884 P.2d at 1205.

## IV. EVIDENTIARY ISSUES

### A. Admission Of Hearsay

■ Appellant next argues the improper admission of hearsay evidence over defense objection resulted in an arbitrary sentence of death. This evidence included statements Titsworth made regarding the fact Allen slapped her during angry encounters, and her belief it was Allen who stole her purse, attempted to break into her apartment, and finally broke in and left raw meat dripping blood from her cupboards. The trial court allowed this hearsay to be introduced as evidence of future dangerousness. The State confesses the error, but argues it is harmless.

This error may be found harmless on appeal only if it is apparent beyond a reasonable doubt the inadmissible hearsay did not contribute to the verdict. *See Hooker v. State*, 887 P.2d 1351, 1360 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 164, 133 L.Ed.2d 106 (1995); *Moore v. State*, 761 P.2d 866, 871 (Okl.Cr.1976). Properly admitted evidence established several angry encounters between Allen and Titsworth during the three days preceding her murder. Allen's former wife also testified to his violent confrontations with her. Given this admissible

testimony, we find the improper hearsay is harmless beyond a reasonable doubt.

## B. Cross–Examination Of The Defendant

■ During cross-examination the prosecutor asked Allen about a previous vehicular homicide for which the prosecutor had no proof. The trial court sustained the defense objection. Appellant argues the prosecutor committed reversible error by injecting this issue into the sentencing proceeding. We agree the prosecutor erred. *See Nelson v. State,* 288 P.2d 429, 434 (Okl.Cr.1955).

■ However, as the State correctly argues, in the context of jury trials, the error may be cured by admonishment by the trial court. *See Hicks v. State,* 713 P.2d 18, 21 (Okl.Cr.1986); *Beavers v. State,* 709 P.2d 702, 705 (Okl.Cr.1985). In the present case the trial court cured the error by announcing his admonishment to the parties:

No, I don't think I'll hear about it. I'm not concerned about it, about an automobile collision, assuming the automobile collision was one of those things that happened and there's been apparently no notice of it, so let's don't worry about it. Let's go on with what we know about it.

## C. SUFFICIENCY OF THE EVIDENCE

### 1. Great Risk To More Than One Person

Appellant argues the evidence is insufficient to prove beyond a reasonable doubt he knowingly created a great risk of death to more than one person. 21 O.S.1991, § 701.12(2). The State points to five sources for the additional person(s): (1) either of the appellant's two sons; (2) children and day care employees on a day care bus; (3) the day care employee who tried to rescue Titsworth; (4) other workers inside the day care; and (5) the officer who apprehended Allen. As we examine the events immediately preceding the murder frame by frame to determine whether this aggravator is proven, we examine the facts as they are, not what might have been had the circumstances differed slightly. Keeping in mind an aggravating circumstance must be proven beyond a reasonable doubt, we begin our analysis with Allen's boys.

■ We cannot tell with any certainty whether Adrian was being held by his mother when she was shot or whether she had put him down. One eye-witness testified to each scenario. No evidence was presented regarding any injury to Adrian caused by falling or by the appellant. The State did not rely on Adrian at trial or on appeal to support this aggravator, and we agree, he does not support it.

■ The record is equally unclear as to where Anthony was during the shooting. He testified he had run back into the day care center; an eye-witness testified he was present. Danger during the first shot was not relied on by the State, rather Anthony's possible presence during the final three shots. The problem with this argument is that it is not supported by the facts. Allen shot Titsworth at point blank range as she lay on the steps. One bullet exited her body, but no evidence suggests this bullet exited with the force or direction to endanger Anthony, if he were present.

■ A day care bus with workers and children aboard was parked immediately in front of Titsworth's truck. Had Allen shot wildly, or from a distance, these people may have been placed in great risk of death. However, as the evidence overwhelmingly proves Allen shot Titsworth at close range all four times, no evidence suggests any of the four shots posed a risk to any of the people in the bus.

■ At oral argument the State suggested the day care worker who tried to rescue Titsworth was placed at great risk of death. The record does not support this position, for uncontroverted facts establish Allen slammed the day care door on her before he shot Titsworth. She was inside during all four shots. Again, given the specific circumstances of this case, the shots fired at close range did not pose a great risk of death to her. The same rationale eliminates other workers inside the day care center as a source for the additional person put at great risk of death.

■ The only remaining source is Officer Taylor who responded to the 911 call. A subsequent attack which does not result in death may satisfy this aggravator if it occurs in "close proximity in terms of time, location and intent to the act of the killing itself". *Snow v. State*, 876 P.2d 291, 297 (Okl.Cr. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1165, 130 L.Ed.2d 1120 (1995).

Oklahoma City Police Officer Michael Taylor was on patrol only a few blocks from the day care center when he responded to the 911 call. An eye-witness directed Officer Taylor to the alley Allen had entered. After Taylor pulled into the alley, Allen came out of hiding and approached the squad car. Taylor drew his service revolver and ordered Allen up against the passenger side of the squad car. Allen appeared momentarily to comply, then began to walk away. With his service revolver still drawn, Taylor ordered Allen to stop. Allen grabbed the revolver and a struggle ensued. With the barrel pointed at Taylor, Allen squeezed Taylor's finger on the trigger, trying to make Taylor shoot himself. Taylor shot as soon as he got the revolver pointed away from himself. The shot blew out Allen's left eye.

This attack may satisfy the aggravator only if it has a proximity of time, place and intent with the murder of Titsworth. Sufficient proximity was found in *Snow* where a second attack occurred moments later in the same place as the murder. *Id.*

The record allows us to conclude that a block and a half, and less than five minutes separated Allen's attacks on Titsworth and Taylor. We do not determine whether the proximity of time and place are satisfied, for it is plain the events were not driven by the same intent. Allen's driving intent to kill Titsworth ended after he killed her on the day care steps; his attack on Officer Taylor was driven by the independent intent to escape. We find the evidence is insufficient to prove Allen knowingly created a great risk of death to more than one person.

### 2. Continuing Threat

■ Appellant next argues the evidence is insufficient to prove the existence of a probability he would commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S.1991, § 701.12(7). The State looks at the same evidence and argues it is sufficient. The evidence will be found sufficient on appellate review if, when taken in the light most favorable to the State, any rational trier of fact could have found the aggravating circumstance beyond a reasonable doubt. *Powell v. State,* 906 P.2d 765, 771 (Okl.Cr.1995).

A pattern of violent conduct toward family and strangers is established beyond a reasonable doubt by the evidence properly admitted in this case. On Christmas Day, 1982, Allen and his nephew picked up a hitch hiker and held him at gun point while they went to a liquor store and discussed committing a robbery. The three then stopped at the home of one of the hitch hiker's friends, and held a woman and her children at gunpoint. Conviction for two counts of pointing a weapon resulted.

Allen had violent arguments with his ex-wife as well as the girl friend he intended to marry, Gail Titsworth. The arguments with Titsworth escalated to the point he shot and killed her.

After killing Titsworth Allen tried to kill Officer Taylor. This pattern was explained by Dr. Ferguson who testified Allen's poor impulse control was made worse by his drinking. Allen testified he drank whenever he could. Nothing in the record supports a conclusion this pattern of violence has been interrupted. Given these facts, the continuing threat aggravator is proven beyond a reasonable doubt.

## V. CONSTITUTIONALITY OF OKLAHOMA DEATH PENALTY SCHEME

### A. Continuing Threat Aggravator

■ Appellant next argues the continuing threat aggravator is vague and overbroad in violation of the Eighth and Fourteenth Amendments. To satisfy the Eighth and Fourteenth Amendments, a capital sentencing scheme must do two things: (1) channel the sentencer's discretion by clear and objective standards that provide specific

and detailed guidance to minimize the risk of wholly arbitrary and capricious sentencing, and (2) make the process for imposing a death sentence subject to rational review. *Arave v. Creech,* 507 U.S. 463, 470, 113 S.Ct. 1534, 1540, 123 L.Ed.2d 188 (1993) (citations omitted).

■ The fundamental question on review is whether the aggravating circumstance, as construed, genuinely narrows the class of persons eligible for the death penalty. *Id.* at 474, 113 S.Ct. at 1542. Constitutional infirmity does not arise merely because the aggravating circumstance is not subject to mechanical application, or because a wide range of circumstances satisfies it. *Id.* at 474–476, 113 S.Ct. at 1542–43.

The defining language of this aggravating circumstance is plain and easily understood:

> The existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

21 O.S.1991, § 701.12(7). In the universe of persons who commit first degree murder the subset of those for whom there exists the probability of committing future violent acts is large. However, this aggravating circumstance sets forth standards which offer guidance to the sentencer; it narrows the class of death qualified defendants; and it is subject to rational review. It therefore withstands constitutional challenge. *See Rogers v. State,* 890 P.2d 959, 976 (Okl.Cr.1995); *Walker v. State,* 887 P.2d 301, 318 (Okl.Cr.), *cert. denied,* —— U.S. ——, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995); *Snow v. State,* 879 P.2d at 150, *Malone v. State,* 876 P.2d 707, 717–718 (Okl.Cr.1994); *Allen v. State,* 871 P.2d 79, 104 (Okl.Cr.), *cert. denied,* —— U.S. ——, 115 S.Ct. 370, 130 L.Ed.2d 322 (1994); *Woodruff v. State,* 846 P.2d 1124 (Okl.Cr.), *cert. denied,* 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993).

### B. Prosecutor's Discretion To Seek Death Penalty

■ Appellant next argues the unbridled discretion of the prosecutor to seek the death penalty results in arbitrary imposition of the death sentence. We have recently rejected this argument. *See Hooker,* 887 P.2d at 1367; *Carter,* 879 P.2d at 1251; *Brown v. State,* 871 P.2d 56, 75 (Okl.Cr.), *cert. denied,* —— U.S. ——, 115 S.Ct. 517, 130 L.Ed.2d 423 (1994). In order to prevail the petitioner must demonstrate the government's prosecution of him was based on impermissible discriminatory grounds. *Carter,* 879 P.2d at 1251. This he has failed to do.

## VI. REWEIGHING OF MITIGATING AND AGGRAVATING EVIDENCE

■ When this Court invalidates an aggravating circumstance, and at least one valid aggravator remains, the Court may reweigh the mitigating evidence against the valid aggravating circumstances to determine whether the weight of the improper aggravator is harmless, and the sentence of death still valid. *See Valdez v. State,* 900 P.2d 363 (Okl.Cr.), *cert. denied,* —— U.S. ——, 116 S.Ct. 425, 133 L.Ed.2d 341 (1995); *Davis v. State,* 888 P.2d 1018, 1022 (Okl.Cr.1995); *McGregor v. State,* 885 P.2d 1366, 1385–86 (Okl.Cr.), *cert. denied,* —— U.S. ——, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995); *Snow,* 876 P.2d at 299. Harmlessness will be found if the elimination of the invalid aggravator cannot affect the balance of mitigating and aggravating evidence beyond a reasonable doubt. *McGregor,* 885 P.2d at 1386; *Stafford v. State,* 853 P.2d 223, 224 (Okl.Cr.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1830, 131 L.Ed.2d 751 (1995); *Stouffer v. State,* 742 P.2d 562, 564 (Okl.Cr.1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). Having invalidated the "great risk of death to more than one person" aggravator, we now reweigh.

The valid remaining aggravating circumstances are: (1) the appellant was previously convicted of two counts of pointing a weapon which is a felony involving the threat of violence to the person; and (2) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. The mitigating evidence includes the fact the appellant is loved by his parents and children, all of the evidence presented by Dr. Ferguson regarding the appellant's poverty,

mental disorders, drug and alcohol abuse, and his lack of impulse control.

Our task on appellate review is to determine what role the invalid aggravator played in sentencing, and whether the sentencing judge would have imposed the death penalty had he not considered the "great risk of death to more than one person" aggravator. *McGregor*, 885 P.2d at 1387. After careful, independent review and consideration of the evidence in support of the valid aggravating circumstances and the evidence in mitigation, this Court finds the sentence of death is factually substantiated and appropriate. Finally, Appellant argues the accumulation of error warrants relief. The identified errors are (1) the admission of hearsay testimony concerning acts committed by Allen, (2) the prosecutors' questions regarding the car accident, and (3) the failure to prove great risk of death to more than one person. Upon examination of each error individually we found the hearsay harmless, the prosecutor's error cured, and the elimination of the "great risk of death" aggravator not enough to warrant reversal or modification of sentence. The errors gain little weight in aggregate and when they are combined still do not warrant relief. We reject the appellant's position that the accumulation of error warrants relief.

## VII. MANDATORY SENTENCE REVIEW

The Legislature has charged this Court to conduct a final analysis in all cases which impose the death penalty to determine (1) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor, and (2) whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance. *See* 21 O.S.1991, § 701.13(C).

In the course of deciding this appeal and affirming the death sentence, we have specifically determined the sentence was not imposed under passion, prejudice, or any other arbitrary factor. We have also determined the evidence supports two of the three aggravating circumstances found by the sentencing judge. We have reweighed these valid aggravators against the mitigating evidence

and determined the sentence of death is both appropriate and factually substantiated.

■ The appellant argues mandatory sentence review is impossible because the sentencing judge failed to make a complete record of his findings in support of the death sentence. This argument is not supported by the record.

■ In non-jury sentencing the trial judge shall designate in writing, and sign, the statutory aggravating circumstance(s) which are found beyond a reasonable doubt. 21 O.S.1991, § 701.11. The trial judge did this. The record contains three sentence verdict forms and the death sentence form is signed by the trial judge. There is no statutory requirement the jury or judge list or state the facts supporting its finding of aggravating circumstances or the exact process used to weigh the aggravators against the mitigating evidence.

The record is very clear. The trial court's sentence was based on the rational application of the appropriate law to the facts of this case. No passion, prejudice, or any other arbitrary factor influenced the imposition of the death sentence. The sentencing judge skillfully conducted the proceedings and in reaching his decision carefully considered all of the evidence and argument of counsel.

In the context of mandatory sentence review, the Appellant also urges this Court to find his death sentence is excessive and disproportionate. In 1985 the Legislature modified 21 O.S.1991, § 701.13(C) and eliminated the requirement that this Court determine whether a sentence of death is excessive or disproportionate. This Court no longer conducts such a review, notwithstanding any language to the contrary in *McCracken v. State*, 887 P.2d 323, 334 (Okl.Cr.), *cert. denied*, —— U.S. ——, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995).

JOHNSON, P.J., and CHAPEL, V.C.J., concur.

LUMPKIN and STRUBHAR, concur in result.

LUMPKIN, Judge, concurring in results.

I concur in the Court's decision to affirm the judgment and sentence in this case. However, I do not agree with the application of *Snow v. State*, 876 P.2d 291, 297 (Okl.Cr. 1994), to the facts of this case. The Court seeks to apply an interpretation to the language in *Snow* which does not comport with either the criteria or the analysis in *Snow*. In effect, the Court's contorted view of the application of the surmised intent of a defendant would ensure a vacating of the "to knowingly create a great risk of death to more than one person" aggravator in toto. I strongly disagree with that interpretation. The evidence in this case, when properly viewed in light of our construction of the statutory aggravator, is more than sufficient to support the "to knowingly create a great risk of death to more than one person" aggravator. Therefore, the Court is not required to reweigh the evidence to find the death penalty is supported by the law and facts in this case.