1999 OK CR 75

Emmanuel Antonia **LITTLEJOHN**,
Appellant,

v.

**STATE** of Oklahoma, Appellee.

No. F–94–1269.

Court of Criminal Appeals of Oklahoma.

Dec. 31, 1998.

James T. Rowan, and Debbie Maddox,
Oklahoma Indigent Defense System, Capital

Litigation Division, Norman, OK, for defendant at trial.

Sandra Howell Stensaas, Pattye Wallace, Assistant District Attorneys, Oklahoma City, OK, for the state at trial.

Anne M. Moore, Division Chief, Capital Direct Appeals Division, Oklahoma Indigent Defense, Norman, OK, for defendant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, William L. Humes, Assistant Attorney General, Oklahoma City, OK, for appellee on appeal.

## OPINION

JOHNSON, Judge.

¶ 1 Emmanuel Antonia Littlejohn was tried by a jury in the District Court of Oklahoma County, Case No. CF–92–3633 before the Honorable Charles L. Owens. Littlejohn was convicted of Robbery with a Firearm, After Conviction of Two or More Felonies (Count I), First Degree Malice Aforethought Murder (Count II) and Conspiracy to Commit Robbery with a Firearm, After Conviction of Two or More Felonies (Count III). After finding the existence of three aggravating circumstances—Littlejohn had previously been convicted of felonies involving the use or threat of violence to the person; Littlejohn knowingly created a great risk of death to more than one person; and Littlejohn posed a continuing threat to society—the jury set punishment at three hundred (300) years for the robbery, death for the murder, and ninety-nine (99) years for the conspiracy. The trial court sentenced Littlejohn accordingly. Littlejohn now appeals.

¶ 2 On June 19, 1992, Littlejohn and Glenn Bethany robbed the Root–N–Scoot convenience store located at 532 Southeast 15th Street in Oklahoma City, Oklahoma. At the time of the robbery, Tony Hulsey, his younger brother, Danny Waldrup, and Kenneth Meers were working in the store. Meers

was killed as Littlejohn and Bethany were exiting the store.

## ISSUES RELATING TO COMPETENCY

¶ 3 Prior to trial, Littlejohn challenged his competency to stand trial and a post-examination competency jury trial was conducted. Pursuant to the statute in effect at the time, Littlejohn was required to prove his incompetence to stand trial by "clear and convincing evidence." 22 O.S.1991, § 1175.4(B). In *Cooper v. Oklahoma,* 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), the United States Supreme Court held this standard violates a defendant's right to due process, and that the proper standard is a preponderance of the evidence. Pursuant to *Cooper,* this Court remanded this matter to the District Court of Oklahoma County to determine (1) whether it was feasible to conduct an appropriate retrospective competency hearing, and (2) if so, to conduct the hearing using the correct standard.[1] Littlejohn stipulated on remand that it was feasible to conduct a retrospective competency hearing, and on October 20–24, 1997, the Honorable Charles L. Owens conducted a retrospective post-evaluation competency jury trial. The jury found that Littlejohn had not proven by a preponderance of the evidence that he was incompetent to stand trial in November, 1994.

¶ 4 Littlejohn submitted a brief containing seven supplemental propositions of error based on his retrospective competency proceedings. In Supplemental Proposition I, Littlejohn contends the trial court abused its discretion by denying Dr. G. Barry Robbins, D .O., pretrial access to Littlejohn for the purpose of conducting tests that were critical to the development of Littlejohn's theory of incompetency. On September 18, 1997, Littlejohn filed a motion requesting that Stephen Carella, Ph.D., Eugene Reynolds, Ph.D., and Dr. G. Barry Robbins, D.O., be permitted to examine and conduct tests on him at the Oklahoma County Jail. Littlejohn further requested that Dr. Robbins be permitted to perform an electroencephalogram (EEG) on

---

1. The Court's remand was in response to Littlejohn's Notice of Change in the Law and Motion for Leave to Present an Additional Assignment of Error which was filed on May 15, 1996, following the Supreme Court decision in *Cooper.*

Littlejohn at a location suitable to the court. On October 1, 1997, the trial court granted Littlejohn's motion with regard to Drs. Carella and Reynolds. However, Dr. Robbins was denied access to Littlejohn and was refused permission to conduct an EEG. The record is silent as to the trial court's rationale.

¶ 5 In spite of the trial judge's ruling, Dr. Robbins testified at the competency trial. Dr. Robbins' testimony was based on his review of numerous documents and records pertaining to Littlejohn. Dr. Robbins opined Littlejohn suffered "some neurological injury from birth." While Littlejohn understood the charges against him, Dr. Robbins concluded Littlejohn was unable, due to neurological damage, to assist his counsel in any meaningful way.

■ ¶ 6 Citing *Frederick v. State*, 1995 OK CR 44, 902 P.2d 1092, 1096, Littlejohn asserts on appeal that he was denied his due process right to the assistance of a competent expert at trial as Dr. Robbins was unable to support his opinion with the necessary neurological test. He further argues this error rendered his retrospective competency determination fatally defective. While it is unclear why Dr. Robbins was precluded from examining Littlejohn and performing an EEG, we find any error which may have occurred in this regard was harmless beyond a reasonable doubt.[2]

■ ¶ 7 The jury was charged with determining Littlejohn's competency on or about the 7th day of November, 1994, through the 18th day of November, 1994. Four experts testified at Littlejohn's retrospective competency hearing.[3] Three of these experts had examined Littlejohn during the relevant time frame. Dr. Robbins was the only expert who had not previously examined Littlejohn. In any event, Robbins was able to testify and form an opinion based upon numerous rec-

ords and documents which had been provided to him. These records included reports prepared by Dr. Edith King, Ph.D. and Dr. Carella. Although Dr. Robbins was the only neurologist to testify, an interview with Littlejohn conducted in 1997 would have been less probative than those conducted near the relevant time period. Moreover, had an EEG ultimately uncovered neurological damage, such damage would not have automatically rendered Littlejohn incompetent to stand trial in 1994. *See Walker v. State*, 1992 OK CR 10, 826 P.2d 1002, 1005–06, *cert. denied*, 506 U.S. 898, 113 S.Ct. 280, 121 L.Ed.2d 207 (an organic brain dysfunction does not automatically mean petitioner was incompetent to stand trial).

¶ 8 During the retrospective competency hearing, Littlejohn conceded he understood the nature of the charges and proceedings brought against him. Littlejohn's incompetency claim went specifically to his ability to assist his attorneys. Although Littlejohn was a difficult client at times,[4] the evidence overwhelmingly demonstrated he was able to assist counsel in his defense and was competent to stand trial in November of 1994. The most compelling evidence comes from Littlejohn's ability to testify for three and a half hours during his 1994 trial. During this testimony, Littlejohn did not seem "confused or baffled or unfocused in any way." Thus, under the circumstances of this case, actual proof of brain damage would not have altered the jury's verdict. Any error resulting from the trial court's restrictions on Dr. Robbins was harmless beyond a reasonable doubt.

■ ¶ 9 We find it troubling, however, that the State improperly attempted to gain an advantage from Dr. Robbins' inability to visit Littlejohn in the county jail. During cross-examination, the State attempted to impeach Dr. Robbins because he had failed to conduct some type of competency evaluation on Littlejohn.[5] Moreover, during closing argu-

2. Littlejohn asserts harmless error analysis is not applicable in this case as the error is structural in nature. We disagree. *See Fitzgerald v. State*, 1998 OK CR 68, ¶ 23, 972 P.2d 1157 (1998).

3. Drs. Robbins, Carella and Reynolds testified for Littlejohn. Dr. King testified for the State.

4. Drs. Robbins, Carella and Reynolds testified Littlejohn suffered from Attention Deficient Disorder.

5. Dr. Robbins clearly testified that he would have liked to have conducted a neurological evaluation on Littlejohn, but he was denied access to Littlejohn.

ments, the State again noted Dr. Robbins' failure to interview Littlejohn and conduct tests. This argument was clearly inappropriate. The trial court's October 1, 1997 order plainly denied Dr. Robbins access to Littlejohn in the county jail. Nevertheless, in light of the strong evidence of competency, we find this error was harmless. Littlejohn's first supplemental proposition of error is denied.

¶ 10 Littlejohn asserts in Supplemental Proposition II that prosecutorial misconduct during the retrospective competency proceeding violated his due process rights and deprived him of a fundamentally fair proceeding. He raises four separate allegations of misconduct. Littlejohn failed to properly object to the challenged arguments contained in his first two allegations. Thus, as to these allegations, Littlejohn has waived all but plain error. *See Toles v. State*, 1997 OK CR 45, 947 P.2d 180, 193, *cert. denied*, 524 U.S. 958, 118 S.Ct. 2380, 141 L.Ed.2d 746 (1998). Upon careful review, we find no plain error occurred.

¶ 11 As to the remainder of this proposition, Littlejohn first contends the State sponsored false and/or misleading testimony that went uncorrected. Littlejohn specifically attacks Sandra Elliott's testimony that she had been instructed by the trial court not to mention the first competency trial held in May 1994. Littlejohn argues the court's admonishment referred to "verdicts" at the 1994 murder trial. Upon review, we find the trial court's admonishment was not that precise. The trial judge simply stated, "I certainly trust we'll not get into anything about the verdict of the trial and this sort of thing." It is unclear whether the trial court was referring to Littlejohn's 1994 competency trial or his 1994 murder trial. It is reasonable to assume the trial court would have wanted Ms. Elliott to avoid testifying regarding the verdicts of either proceeding. Under these circumstances, Littlejohn has failed to demonstrate that the State knowingly used false testimony. *See Omalza v. State*, 1995 OK CR 80, 911 P.2d 286, 307.[6] We further

find the challenged testimony was not material to the jury's competency determination.

¶ 12 Littlejohn next asserts the prosecutor attempted to introduce testimony she knew, or should have known, was inadmissible. During cross-examination of Melody Brannon, the State inquired, "Isn't it true that Dr. Reynolds didn't even examine the defendant for competency?" Ms. Brannon replied, "I don't remember Dr. Reynolds' involvement." Thereafter, the State made two inquiries about a test conducted by Dr. Reynolds on Littlejohn. After Brannon stated she had no recollection of Reynolds' involvement, Littlejohn asserts further questioning on the subject would have yielded non-probative, inadmissible answers. 12 O.S. 1991, § 2602. We agree. However, this error was harmless. Brannon responded on both occasions that she did not remember Dr. Reynolds' involvement, and Dr. Reynolds subsequently testified regarding the tests he conducted on Littlejohn. This proposition of error fails.

¶ 13 In Supplemental Proposition III, Littlejohn argues the trial court erred when it permitted the State to utilize Littlejohn's testimony from his 1994 trial to prove his competence at that time. It is well established by this Court that a defendant's trial testimony may be considered in a retrospective competency proceeding. *See Lambert v. State*, 1994 OK CR 79, 888 P.2d 494, 499; *Boltz v. State*, 1991 OK CR 1, 806 P.2d 1117, 1122, *cert. denied*, 502 U.S. 846, 112 S.Ct. 143, 116 L.Ed.2d 109. We need not revisit this issue again at this time.

¶ 14 Littlejohn further asserts, however, that even if the challenged evidence was proper, the prosecutor should not have been permitted to read "pages and pages" of the 1994 trial testimony to the jury. While Littlejohn's act of testifying might have been probative of whether he could communicate effectively with his attorney, Littlejohn maintains the excerpts chosen by the prosecutor which disclosed details about the crime were designed solely to prejudice the jury. We

---

6. To prove this type of claim on appeal a defendant must establish "(1) certain testimony was misleading, (2) the prosecution knowingly used

the testimony and (3) the testimony was material to guilt or innocence."

disagree. Littlejohn testified at trial for over three hours. His testimony made up approximately 138 pages of the trial transcripts. The State was only permitted to read roughly five pages of his testimony to the jury. These excerpts demonstrated Littlejohn's ability to recall very specific details of the circumstances surrounding the robbery/murder and his ability to communicate those details while his attorney was asking him questions. The probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. 12 O.S.1991, § 2403. Thus, this allegation of error is denied.

¶ 15 Littlejohn contends in Supplemental Proposition IV that the State deprived him of a reliable competency determination by introducing irrelevant and highly prejudicial testimony. He initially complains Sandra Elliot and Pattye High, prosecutors at his 1994 trial, improperly invaded the province of the jury by expressing their opinions that Littlejohn was in fact competent in 1994. As defense counsel failed to object to the now challenged opinion evidence, we review only for plain, reversible error. *See Slaughter v. State,* 1997 OK CR 78, 950 P.2d 839, 850, *cert. denied,* — U.S. ——, 119 S.Ct. 199, 142 L.Ed.2d 163 (1998). No such error occurred here.

¶ 16 "Opinion evidence on ultimate issues is generally admissible." *Romano v. State,* 1995 OK CR 74, 909 P.2d 92, 109, *cert. denied,* 519 U.S. 855, 117 S.Ct. 151, 136 L.Ed.2d 96 (1996); 12 O.S.1991, § 2704. However, the "otherwise admissible" language contained in section 2704 must be read in conjunction with 12 O.S.1991, §§ 2403, 2701—2703. *See Romano,* 909 P.2d at 109; *Hooks v. State,* 1993 OK CR 41, 862 P.2d 1273, 1278, *cert. denied,* 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994). Sections 2403, 2701 and 2703 operate to bar admission of opinions which simply tell a jury what result to reach. *Romano,* 909 P.2d at 109.

¶ 17 In the present case, both Ms. Elliott and Ms. High testified similarly regarding their observations of Littlejohn during numerous hearings and during his 1994 trial. Elliott testified that she had viewed the four-hour police interview tape of Littlejohn which was made shortly after his arrest. She recalled he was able to give great detail about the facts of the crime. Elliott further testified Littlejohn was able to relate the same details to his attorney on direct examination during the 1994 trial. During cross-examination, Elliott stated Littlejohn "gave relevant responses that were answers to the questions that I asked." During his three and a half hours of testimony, Elliott testified Littlejohn did not seem "confused or baffled or unfocused in any way." At the conclusion of her testimony, Elliott opined based on her expertise as a lawyer that she had "no doubt that he was competent to stand trial." Ms. High testified to similar observations and also ultimately opined Littlejohn was competent to stand trial in 1994.

¶ 18 Competency to stand trial is not merely a medical issue. *See Lambert,* 888 P.2d at 502, *citing Campbell v. State,* 1981 OK CR 136, 636 P.2d 352, *cert. denied,* 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983). "[T]estimony from lay persons who have observed the defendant's behavior and communicative abilities is proper, provided the observations are reasonably proximate in time to the competency trial." *Lambert,* 888 P.2d at 502. If any error occurred when Elliott and High concluded their direct-examination testimony by expressing their respective opinions of Littlejohn's competency, such error was clearly harmless. Littlejohn's incompetency claim went specifically to the effect his attention deficient disorder and possible delusions had on his ability to assist his attorneys. He did not contest evidence that he was relatively intelligent and understood the nature of the charges and proceedings brought against him. Although Littlejohn may have been a difficult client at times, the evidence clearly demonstrated he was able to assist counsel in his defense and was competent to stand trial in November of 1994. Based on their observations of Littlejohn, Elliott and High's opinions of his competency would have been obvious to any reasonable juror.

¶ 19 Littlejohn next claims the State improperly elicited prejudicial and irrelevant evidence regarding prior violent acts

committed by Littlejohn. The challenged testimony was elicited during the cross-examination of Dr. Robbins and Melody Brannon. Littlejohn contends the accusations of prior misconduct were irrelevant to the case and were interjected solely for their prejudicial value. We review for plain error only as defense counsel failed to object to the challenged testimony. *See Slaughter,* 950 P.2d at 850. Plain error did not occur here. With regard to Dr. Robbins' testimony, the brief line of questioning was proper as it gave the trier of fact insight into the underlying facts or data relied upon by Dr. Robbins when forming his competency opinion. 12 O .S. 1991, §§ 2702–2705. With regard to Ms. Brannon, Littlejohn's attorney until September of 1994, the challenged questioning was also relevant to the competency determination. When read it its entirety, the challenged line of questioning was intended to demonstrate Littlejohn was not incompetent but rather that he was a difficult and challenging client. Thus, this allegation of error fails.

¶ 20 In Supplemental Proposition V, Littlejohn asserts the trial court failed to make a proper finding regarding the feasibility of conducting a retrospective competency hearing. Although defense counsel stipulated that it was feasible to conduct a competency trial in this matter, Littlejohn argues the stipulation could not replace the trial court's duty to decide the issue. We are not persuaded by this argument. Defense counsel's stipulation relieved the State of its burden of proving it was feasible to conduct a retrospective competency proceeding in this case.

¶ 21 In Supplemental Proposition VI, Littlejohn urges this Court to reconsider its position that retrospective competency trials are permissible, do not violate the presumption of innocence, and are consistent with the Eighth Amendment. This Court rejected this argument in *Bryan v. State,* 1997 OK CR 15, 935 P.2d 338, 350, *cert. denied,* 522 U.S. 957, 118 S.Ct. 383, 139 L.Ed.2d 299. *See also Tate v. State,* 1995 OK CR 24, 896 P.2d 1182, 1186–88. We are not persuaded to revisit this issue again at this time.

¶ 22 Finally, Littlejohn contends in Supplemental Proposition VII that his rights under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article II, Sections 7, 9, and 20 of the Oklahoma Constitution were violated by his retrospective competency proceeding. Specifically, Littlejohn claims that his hearing violated due process because the jury was never required to determine if he had a rational as well as a factual understanding of the proceedings against him. He further maintains the burden of proof should have been placed upon the State to prove his competence. As conceded by Littlejohn, these claims have been previously considered and rejected by this Court. *See Tate,* 896 P.2d at 1186–88; *Lambert,* 888 P.2d at 498–99, 502. We do so here again.

## ISSUES RELATING TO GUILT–INNOCENCE

¶ 23 In his first assignment of error, Littlejohn maintains his due process rights were violated by the State's use of inconsistent "triggerman" theories. Because the State argued at co-defendant Bethany's trial that Bethany was the triggerman, Littlejohn submits the prosecution should have been precluded from arguing at his trial that he fired the fatal shot. The same prosecutor tried both cases. This is an issue of first impression for this Court.

¶ 24 In *Parker v. Singletary,* 974 F.2d 1562 (11th Cir.1992), the Eleventh Circuit Court of Appeals addressed this same issue. Parker was convicted and sentenced to death for the murder of a convenience store clerk. Parker and each of his three co-defendants were tried separately. At each of the co-defendant's trials the prosecution argued that a particular co-defendant pulled the trigger. On appeal from a petition for federal habeas relief, the Court of Appeals found no due process violation had occurred. *Parker,* 974 F.2d at 1578. Given the uncertainty of the evidence, the court reasoned it was proper for the prosecutors in the other cases to argue alternate theories as to the facts of the murder. *Id.* "The issue of whether the particular defendant on trial physically commit-

ted the murder was an appropriate question for each of the co-defendants' juries." *Id.*

¶ 25 In reaching this determination, the *Parker* court discussed the Supreme Court case of *Green v. Georgia*, 442 U.S. 95, 97, 99 S.Ct. 2150, 2151, 60 L.Ed.2d 738 (1979), and a special concurrence in the en banc case of *Drake v. Kemp*, 762 F.2d 1449, 1478–79 (11th Cir.1985) (Clark J., specially concurring), *cert. denied*, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 738 (1986).

> In *Green*, the Georgia courts had refused to admit exculpatory hearsay testimony from a witness who had given the same testimony but instead had appeared for the prosecution in a codefendant's previous trial. The Supreme Court reversed, holding that the exclusion of the evidence prevented Green's sentencing jury from hearing all relevant mitigating evidence. In *Drake*, two defendants were convicted for the same murder in separate trials. The state had contended at the first defendant's trial that the first defendant had actually killed the victim. The first defendant testified at his trial that he did not participate in the murder and accused the second defendant of being the perpetrator. One year later, the state used the testimony of the first defendant to show that the second defendant had actually killed the victim. The concurrence concludes that the prosecutor had obtained the second conviction through the use of evidence that he could not have believed, given that the prosecutor had disputed the first defendant's testimony in the first trial. (citations omitted).

*Parker*, 974 F.2d at 1578.

¶ 26 The *Parker* court found these two cases distinguishable because Parker's prosecution "did not involve the use of necessarily contradictory evidence." *Id.* Due to the lack of evidence regarding the identity of the

actual shooter, the court concluded the only inconsistency was in the state's alternative arguments. We find this rationale to be persuasive.

¶ 27 In the instant case, there was no physical evidence demonstrating who fired the fatal shot. Tony Hulsey testified he saw Littlejohn pointing his gun towards the victim just prior to the shot being fired. Yet, Hulsey did not see who fired the shot. Neither Hulsey nor Waldrup ever saw co-defendant Bethany with a firearm. On the other hand, witnesses outside the convenience store believed the shooter was the taller of the two perpetrators. Littlejohn was described as light-skinned and short while Bethany was described as much darker and taller. Thus, the evidence was less than conclusive as to the identity of the shooter.

¶ 28 Although the prosecutor did argue at Bethany's trial that Bethany could have been the shooter,[7] we find that given the uncertainty of the evidence it was proper for the prosecutor to argue alternate theories as to the facts of the murder. The issue of whether Littlejohn was the actual shooter was an appropriate question for the jury. Thus, this proposition of error is denied.

¶ 29 In his second assignment of error, Littlejohn contends the State's reliance on the same course of conduct to support both his conviction for Robbery with a Firearm and Conspiracy to Commit Robbery with a Firearm violates constitutional and statutory violations against double jeopardy. In addition to the double jeopardy issue, Littlejohn urges this Court to consider Section 11(A) of Title 21.[8] *See Hale v. State*, 1995 OK CR 7, 888 P.2d 1027, 1029.

■■■ ¶ 30 This Court has consistently held "that a conspiracy to commit an unlawful act constitutes an independent crime, complete in itself and distinct from the unlawful act

---

7. "And I would submit to you that it is reasonable to believe that Mr. Bethany backed up to the door, held it open while Mr. Littlejohn ran out, and that according to the evidence of the people across the street, it was the taller of the two gentlemen [i.e. Bethany] who stood at the door and fired a shot back inside."

8. Title 21, Section 11(A) states in pertinent part:

> An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, ... but in no case can it be punished under more than one; and an acquittal or conviction ... under either one, bars the prosecution for the same act or omission under any other.

contemplated." *Stohler v. State ex rel. Lamm,* 1985 OK CR 30, 696 P.2d 1038, 1040. *See also Huckaby v. State,* 1990 OK CR 84, 804 P.2d 447, 450. Title 21, Section 11(A) does not alter this determination in the present case. *See Stohler,* 696 P.2d at 1040. The act of plotting to rob the Root–n–Scoot is what led to Littlejohn's conviction for Conspiracy to Commit Robbery with a Firearm. The act which gave rise to the charge of Robbery, however, was the actual carrying out of that plan. As two separate criminal acts were committed, punishment for both is not prohibited under 21 O.S.1991, § 11(A). Therefore, this proposition of error fails.

¶ 31 Littlejohn submits in his third proposition of error that prosecutorial misconduct during first-stage closing arguments deprived him of due process and a reliable sentencing proceeding. Littlejohn cites to three specific instances of misconduct. However, he concedes each of the challenged comments were not met with a contemporaneous objection. Thus, Littlejohn has waived all but plain error. *Toles,* 947 P.2d at 193; *Le,* 947 P.2d at 554. No such error occurred here.

¶ 32 Only one of the challenged instances requires · some attention. Danny Waldrup testified he believed Kenneth Meers was the one who yelled "get down" as he ran from behind the .coolers toward Littlejohn and Bethany with a broom. Waldrup's brother, Tony Hulsey, heard the words spoken but did not know who said them. However, during closing arguments the State argued Littlejohn or "the robbers" yelled "get down," and that Meers was shot while he was trying to comply with the command.[9] While this argument was overreaching, it clearly

does not amount to plain error as the evidence of Littlejohn's guilt was overwhelming.

## ISSUES RELATING TO SENTENCING STAGE

¶ 33 During the penalty stage of trial, the State called Lawrence Tingle to testify. Tingle had met Littlejohn while they were both incarcerated at the Oklahoma. County jail. Although they were locked in separate cells, Tingle testified they were able to communicate with each other by speaking through their toilets (after removing the water). They also laid down on the floor to talk to each other under the doors. Over Littlejohn's objections, Tingle testified that during their conversations Littlejohn had admitted killing three people. In addition to shooting Kenneth Meers in the instant case, Tingle testified Littlejohn admitted hiring someone to kill his ex-girlfriend and their baby in Tulsa. This evidence was introduced to prove the "continuing threat" aggravating circumstance.

¶ 34 In his fourth assignment of error, Littlejohn contends his due process rights were violated when the trial court permitted Tingle to testify about Littlejohn's alleged confession to the Tulsa murders. Littlejohn submits this alleged confession was not admissible because the State failed to present any corroborative evidence to demonstrate the confessions trustworthiness. We must agree.

¶ 35 In *Roberts v. State,* 1994 OK CR 1, 868 P.2d 712, 719–20, *cert. denied,* 513 U.S. 855, 115 S.Ct. 158, 130 L.Ed.2d 96, this Court addressed whether corroboration of a confession should be required, even if the prosecution is not actually trying the defendant for

---

9. During the State's initial closing argument, the prosecutor argued:

Somebody yelled "get down." Was Kenneth Meers going down? Was he trying to get down on the floor like he was told and this man shot him? Is that what happened? Is that consistent with all of the evidence that you've heard, that Kenneth Meers was simply trying to do what he was told and get down and he was shot in the face and he lay on the floor in an enormous pool of blood when it was all over?

The following argument was made during the State's final closing argument:

I think the circumstantial evidence and the testimony of the witnesses there tell you what occurred. As Mr. Littlejohn's telling everybody to get down, get down, get down, that Kenneth Meers attempts to do that. Because we know that that shot entered his face this way and came out here. And I would submit to you that it's clear that Mr. Meers at least at some point was attempting to do what he had been told, that is to get down. And that it was at that point that Mr. Littlejohn fired a shot into his face, expecting that Mr. Meers may try to prevent him from escaping.

the crimes to which he confessed. The defendant in *Roberts* was being prosecuted for first-degree murder and first-degree burglary. Prior to his trial, he confessed to twenty (20) other specific acts involving rape and burglary. The State introduced his video taped confession regarding these acts during the penalty stage of trial to prove he was a continuing threat to society. On appeal, the Court concluded corroboration of his confession to these unadjudicated crimes was required. *Roberts*, 868 P.2d at 719–20.

¶ 36 A confession is not admissible under Oklahoma law unless it is supported by "substantial independent evidence which would tend to establish ... [its] trustworthiness...." *Fontenot v. State*, 1994 OK CR 42, 881 P.2d 69, 77–78, (alterations in original) (quoting *Opper v. United States*, 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954)). *See also Rogers v. State*, 1995 OK CR 8, 890 P.2d 959, 975, *cert. denied*, 516 U.S. 919, 116 S.Ct. 312, 133 L.Ed.2d 215. However, each material element does not need to be corroborated by facts independent of the confession. In fact, there may be inconsistencies between the facts proven and the facts related in the confession, so long as the inconsistencies do not overwhelm the similarities. *Rogers*, 890 P.2d at 975; *Fontenot*, 881 P.2d at 80–81.

¶ 37 In the instant case, the State failed to introduce any true corroborating evidence. The only corroboration offered was a newspaper clipping about the Tulsa murders. Tingle testified Littlejohn had shown him the newspaper clipping during their discussion. The article gives a brief description of the discovery of the bodies of Joyland E. Morgan and her 6–year–old son, Kewan Deonte Morgan. The story reports that the two were found in their Tulsa apartment "fatally bludgeoned." This clipping did not provide the necessary corroboration. The bare fact that a woman and her child were killed at some unknown time in Tulsa does nothing to substantiate the sparse confession Tingle testified Littlejohn had made. Furthermore, there is nothing in the article indicating the murders were the result of a contract killing. Consequently, we find Mr. Tingle's testimony

regarding the Tulsa murders was admitted in violation of Littlejohn's due process rights.

¶ 38 We must now determine what relief, if any, is appropriate in this case. If the State can prove beyond a reasonable doubt that a constitutional error did not contribute to the verdict, the error is harmless and the verdict may stand. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The State contends the admission of this evidence was harmless because there was other properly admitted evidence supporting the "continuing threat" aggravating circumstance. However, the question is "not whether the legally admitted evidence was sufficient to support the death sentence, ... but rather, whether the State has proved 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Satterwhite v. Texas*, 486 U.S. 249, 258–59, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988) (quoting *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828).

¶ 39 Upon thorough review, we find it is impossible to conclude beyond a reasonable doubt that Mr. Tingle's testimony regarding the Tulsa murders did not contribute to the jury's finding of the "continuing threat" aggravating circumstance. The jury was improperly led to believe Littlejohn not only killed Kenneth Meers, but was also responsible for the horrifying death of his ex-girlfriend and their child. If believed, the improper evidence surely influenced the jury's verdict.

¶ 40 Furthermore, we find the "great risk of death" aggravating circumstance also fails in this case. In his eleventh assignment of error, Littlejohn contends there was insufficient evidence to support the "great risk of death" aggravating circumstance. We must agree. When considering the sufficiency of the evidence supporting an aggravating circumstance, this Court considers the evidence in the light most favorable to the State and inquires whether it was competent to support the aggravator alleged. *Valdez v. State*, 1995 OK CR 18, 900 P.2d 363, 382, *cert. denied*, 516 U.S. 967, 116 S.Ct. 425, 133 L.Ed.2d 341; *accord Bryson v. State*, 1994 OK CR 32, 876 P.2d 240, 259, *cert. denied*, 513 U.S. 1090, 115 S.Ct. 752, 130

L.Ed.2d 651 (1995). With regards to the "great risk of death" aggravator, this Court has held "it is not the death of more than one person which supports [it], but the defendant's acts that create the risk of death to another which are in close proximity, in terms of time, location and intent to the act of the killing itself." *Snow v. State*, 1994 OK CR 39, 876 P.2d 291, 297, *cert. denied*, 513 U.S. 1179, 115 S.Ct. 1165, 130 L.Ed.2d 1120 (1995). *See also Allen v. State*, 1996 OK CR 9, 923 P.2d 613, 620–21, *cert. granted*, 520 U.S. 1195, 117 S.Ct. 1551, 137 L.Ed.2d 699 (1997).[10]

¶ 41 In the present case, the State presented no evidence that Littlejohn considered injuring anyone other than the actual victim. *See Valdez*, 900 P.2d at 382–83. Although Littlejohn pointed a gun at Tony Hulsey when he asked for the store's money, this act was driven by Littlejohn's intent to rob the Root–N–Scoot. *See Allen*, 923 P.2d at 621 (two separate attacks not driven by the same intent). Every robbery with a firearm involves a similar act. Furthermore, the act of pointing the gun was not accompanied by any other acts which would indicate Littlejohn considered killing Hulsey. This is not a case where the defendant shot wildly into a store or a crowd. Only one shot was fired. This shot hit its intended victim. This single shot did not endanger anyone else present in the store. Consequently, under the specific circumstances of this case, we find the evidence was insufficient to prove Littlejohn knowingly created a great risk of death to more than one person.

¶ 42 From this trial, only one valid aggravating circumstance remains (i.e. Littlejohn had previously been convicted of felonies involving the use or threat of violence to the person). Generally where one or more aggravating circumstances has been invalidated, "this Court may conduct an independent reweighing of aggravating and mitigating circumstances to determine whether a verdict is factually substantiated and a death sentence is valid." *Davis v. State*, 1995 OK CR 5, 888 P.2d 1018, 1022. (footnote omitted). *See also Valdez*, 900 P.2d at 384; *Stout v. State*, 1991 OK CR 98, 817 P.2d 737, 739. However, under the circumstances of this case, we find a reweighing of the remaining aggravating circumstance with the mitigating evidence is simply not a feasible option.[11] Over ninety percent of the aggravating evidence presented in this case was presented to prove the "continuing threat" aggravating circumstance. This evidence was compelling. As the majority of this evidence will be admissible on remand, we find Littlejohn's death sentence should be vacated and this matter remanded to the district court for resentencing.[12]

¶ 43 Therefore, for the above stated reasons, Counts I and III are **AFFIRMED**. Littlejohn's conviction for First Degree Malice Aforethought Murder (Count II) is **AFFIRMED**, but his sentence of death is **VACATED** and this matter is **REMANDED** to the district court for **RESENTENCING**.

CHAPEL, P.J., STRUBHAR, V.P.J., LUMPKIN, and LANE, JJ., concur.

LUMPKIN, Judge: concurs.

¶ 1 I concur in the Court's decision to affirm the judgments and sentences in Counts I and III, the judgment in Count II and to remand Count II for resentencing. On remand the evidence is sufficient, excluding evidence of the murders of Appellant's ex-girlfriend and their child, to submit the aggravating circumstance of continuing threat to the jury. This evidence includes two (2) prior adjudicated offenses, evidence that Appellant laughed at scaring the store

---

10. The United States Supreme Court granted certiorari on the issue of Allen's competence to enter a plea, and remanded the cause for reconsideration of this issue in light of *Cooper v. Oklahoma*, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996). In *Allen v. State*, 1998 OK CR 25, 956 P.2d 918, this Court affirmed the finding of competence and reinstated the opinion found at *Allen*, 923 P.2d 613.

11. This determination is not intended to imply that this Court cannot reweigh where more than one aggravating circumstance has been invalidated. Rather, we merely find that under the particular circumstances of this case that reweighing is not a viable alternative.

12. The remainder of Appellant's allegations of error are rendered moot by this determination.

clerk during the robbery, and evidence of violent behavior and instances of misconduct by Appellant while he was previously incarcerated, including threats to take a guard hostage if given the death penalty. This evidence is sufficient for a jury to consider and determine whether it is sufficient to support a finding of the existence of the continuing threat aggravator.