**Rocky Dale SNOW, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–89–638.

Court of Criminal Appeals of Oklahoma.

May 31, 1994.

- Joe Wilson, Asst. Dist. Atty., Ada, Chris Ross, Asst. Dist. Atty., Seminole, at trial, and Susan Brimer Loving, Atty. Gen. of Oklahoma and A. Diane Blalock, Asst. Atty. Gen., Oklahoma City, on appeal, for appellee.

W.B. Ward, Jr., Ada, at trial and Anne M. Moore, Appellate Indigent Defender, Norman, on appeal, for appellant.

## OPINION

LANE, Judge:

Appellant, Rocky Dale Snow was tried by jury and convicted of the crimes Unauthorized Use of a Motor Vehicle, After Two or More Felonies; Assault and Battery With Intent to Kill; and Murder in the First Degree in Pontotoc County District Court, Case No. CRF–88–210. The jury recommended sentences of twenty (20) years, ninety-nine (99) years, and death respectively which the trial court imposed. We affirm.

According to the evidence presented at trial Appellant took a reddish-brown company pick-up truck from the Stallings Construction yard in Ada sometime between 10:00 and 10:30 a.m. on December 8, 1988. Appellant's brother, Allen, worked for Stallings. Appellant drove to the 12th Street Flea Market in Ada. He entered the office where proprietor Betty Bush, her brother-in-law Richard Newlund, and Wayne Russell, a flea market tenant, were warming themselves by a stove and asked to see bedding. Mrs. Bush took him to unit # 10 where bedding was kept. Shortly thereafter, Appellant returned to the office and asked Richard Newlund to come help them. As soon as Newlund stepped inside unit # 10 Appellant attacked him with a knife, slashing his neck, head and hand. Appellant ran away as Newlund called for help. Wayne Russell called the police at 10:47 a.m.. Russell and Newlund found Bush stabbed in the head and chest and wedged between a mattress and box springs. An ambulance arrived and the emergency medical technicians reestablished Bush's pulse and breathing. She never regained consciousness and died shortly thereafter. Newlund was hospitalized and recovered from his injuries.

The Stallings truck was seen speeding away from the flea market, running stop signs. Appellant bought himself new clothes and boots, and presents for his girlfriend's mother. He drove to McAlester to see his girlfriend. He arrived at approximately 1:30 p.m. and took her shopping for boots. After trying unsuccessfully to leave the Stallings truck with friends, he drove it to the Stallings yard in Hartshorne, wiped it clean of fingerprints, and left it.

On December 9, the day following the crime, eye-witnesses Newlund and Russell worked with a police artist to create a composite drawing of the attacker. They were consistent in their descriptions. Five days later, on December 13 each independently identified the same man at the police line-up: a Southeastern State University student who was at home with his wife at the time of the crime. The *Ada Evening News* ran articles on the murder December 14, 15, 16, and 18. Each article reported neither Newlund or Russell identified Snow, who had been picked up as a suspect in the crime. On December 20 the *Ada Evening News* ran an article with a picture of the appellant next to the composite drawing. The article reported in part:

> ... Authorities said [Snow] matches witnesses' description of the murder suspect and claim he stole a pickup which resembles the one the attacker drove in his escape from the murder scene.
>
> Newlund and another witness were unable to identify Snow in a police line-up last week, but prosecutors claim Snow disguised his identity in the line-up ...

A few days later Russell told the police Snow was his attacker. Russell identified Snow at the preliminary hearing on the Unauthorized Use charge. After this identification the district attorney filed the murder charge. Both Russell and Newlund identified the appellant at trial. Russell admitted he had seen the December 20 article in the *Ada News*.

## IDENTIFICATION ISSUES

Appellant challenges the line-up procedure, the admission of the in-court identification and the failure of the trial court to give a

cautionary instruction *sua sponte*. He also argues defense counsel's failure to move to suppress the identification or request a cautionary instruction is evidence of ineffective assistance.

■ Defense counsel filed a motion to enjoin the police from conducting a line-up citing several grounds, including prejudice if the appellant's brother, Allen, were not included in the lineup. The trial court denied the motion. Appellant challenges the court's ruling, yet cites no authority to support his position that the trial court erred. Indeed, the authority supports the court ruling for a magistrate has no jurisdiction over police procedures pertaining to a lineup. *Moss v. Hicks*, 738 P.2d 155 (Okl.Cr.1987).

Appellant next argues his in-court identification was unreliable and should have been suppressed. Recognizing trial counsel did not object to admission of the testimony, or request a cautionary instruction, Appellant takes two tacks: that counsel's failure to object or request a cautionary instruction amounts to ineffective assistance of counsel and that the trial court should have given a cautionary instruction *sua sponte*.

■ Counsel's failure to request suppression of the in-court identification limits the review of this court to that of fundamental error only. *Cole v. State*, 766 P.2d 358, 359 (Okl.Cr.1988). An in-court identification tainted by unnecessarily suggestive pretrial identification procedures is admissible only if independent reliability under the totality of the circumstances can be established. *Cole v. State*, 766 P.2d 358, 359 (Okl.Cr.1988); *Weatherly v. State*, 733 P.2d 1331, 1338 (Okl. Cr.1987); *Chatman v. State*, 716 P.2d 258 (Okl.Cr.1986).

■ Only reliable eye-witness identifications are to get to the jury. Usually reliability is determined by the trial court in an *in camera* hearing upon objection by defense counsel. In the present case defense counsel did not object to eye-witness identification, and thus did not trigger trial court determination of reliability. Instead defense counsel cross examined the witnesses extensively to weaken their credibility. The failure to object appears to be trial strategy. As such it

cannot be a grounds for a claim of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

■ Continuing his challenge of the in-court identification the appellant argues the trial court should have given the jury a cautionary instruction *sua sponte*. Appellant acknowledges counsel's failure to request the instruction waives the issue on appeal absent a substantial violation of his rights. *Cole v. State*, 766 P.2d 358, 360 (Okl.Cr.1988). Such a substantial violation will be found if there is a very substantial likelihood of misidentification. *Newsom v. State*, 763 P.2d 135 (Okl.Cr. 1988); *United States v. Aigbevbolle*, 772 F.2d 652, 653 (10th Cir.1985). *Manson v. Brathwaite*, 432 U.S. 98, 113, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140 (1977).

■ Certainly the reliability of the in-court identification by both Newlund and Russell is weakened by the fact each failed to identify the appellant in the police line-up. However, where this fact was thoroughly brought out by cross-examination, each witness testified he identified appellant in-court based on his memory from the time of the crimes, and the jury was properly instructed it was the sole judge as to the credibility of the witnesses, and the circumstantial evidence supports the identification as well, we cannot say there is a very substantial likelihood the witnesses misidentified the appellant. The trial court did not err by failing to issue a cautionary instruction *sua sponte*.

## ISSUES CONCERNING THE FIRST STAGE OF TRIAL

■ At the end of the State's case-in-chief the defendant lodged a demurrer which the trial court overruled. Appellant then put on his case. On appeal he argues the trial court erred by overruling the demurrer. By going forward with his case the appellant waived examination of the sufficiency of the evidence at the end of the State's case. *Jones v. State*, 772 P.2d 922 (Okl.Cr.1989); *Doyle v. State*, 759 P.2d 223 (Okl.Cr.1988); *Clifton v. State*, 737 P.2d 946 (Okl.Cr.1987). Rather the Court looks to the entire record to determine whether the evidence was sufficient to

prove the crime charged. *Clifton v. State,* 737 P.2d 946 (Okl.Cr.1987); *McLeod v. State,* 725 P.2d 877 (Okl.Cr.1986); *Clayton v. State,* 695 P.2d 3 (Okl.Cr.1984).

When, as here, both direct and circumstantial evidence support the jury's verdict, the standard of review is whether the evidence is sufficient to allow a rational trier of fact to so hold. *Drew v. State,* 771 P.2d 224 (Okl.Cr.1989). The appellant was identified driving the pickup away from the Stallings yard. About a half hour thereafter the truck was seen speeding away from the flea market. Later that afternoon the appellant was driving the pickup in McAlester, tried to leave it with friends, and ultimately left it in the Stallings' yard in Hartshorne after wiping it clean of fingerprints. The two eyewitnesses identified appellant, though the identifications were discredited by a prior failure to identify. This evidence is sufficient to prove appellant was the man at the flea market.

Five color slides of the deceased body of Mrs. Bush were introduced at trial. Each showed a different stab wound. Appellant argues the introduction of these slides warrants reversal for they had no probative value and their purpose was only to inflame the jury. The slides in question corroborated the testimony of the medical examiner. As such they have probative value. Any emotional impact connected to the slides comes from the nature of the murder itself and not from gratuitous gore. The photos were properly admitted. *Moore v. State,* 736 P.2d 161 (Okl.Cr.1987); *McCormick v. State,* 845 P.2d 896 (Okl.Cr.1993).

Asserting he was denied effective assistance of counsel appellant cites four omissions, in addition to those addressed as identification issues, to support the claim. Appellant first challenges defense counsel's failure to seek a continuance to develop evidence to impeach the credibility of State's witness Sondra Campbell. Campbell, who was endorsed by the State two days before trial, testified the appellant confessed the murder to her. Defense counsel thoroughly cross-examined this witness and weakened her credibility considerably. We find no error here.

Defense counsel did not object to certain evidence offered by the State during the guilt stage of trial: a plaster cast of a boot print, and photographs of skid marks, a tire track and tennis shoes. Appellant argues counsel was ineffective by failing to object for this evidence was irrelevant and thus inadmissible. The State counters arguing the evidence is relevant. The boot print was the same size as the appellant's; the skid marks and tire tracks could have been made by the Stalling's truck seen speeding away from the flea market. The tennis shoes were photographed at the apartment where appellant had been staying and contradicted his statement to his girlfriend that he wore his tennis shoes on the day of the murder. While none of this evidence is particularly strong, it does tend to make certain facts more or less probable than they would have been without the evidence. Thus, the evidence satisfies the statutory requirement for admission. *See* 12 O.S.1981, § 2401. Counsel did not err by failing to object to it.

Appellant next faults defense counsel for failing to call appellant's father, or uncle as witnesses. Had these witnesses been called, he argues, they could have corroborated certain defense evidence. Of course they would also have been subject to cross-examination. As there is no claim defense counsel was not aware of these witnesses, the decision not to call them must be considered reasonable trial tactics. Reasonable trial tactics, even those which ultimately are not successful, are not grounds for finding trial counsel ineffective. *Jones v. State,* 781 P.2d 326 (Okl.Cr.1989); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Appellant's final challenge to counsel's effectiveness is his failure to call witnesses or give an opening statement and closing argument in the second stage of trial. The State points out counsel thoroughly cross-examined the State's witnesses, and successfully kept out unadjudicated juvenile offenses. He stated in waiving closing argument the State had conceded at least one mitigating circumstance. While counsel's

performance was not what we might like to see, we cannot find the outcome of this case was determined by this second-stage performance. Thus, it does not satisfy the *Strickland* standard for ineffectiveness.

■ Appellant next argues the evidence was insufficient to support conviction for unauthorized use of a motor vehicle and the trial court should have instructed the jury on the crime of joyriding. The appellant did not request a joyriding instruction. As interesting as this question is, we do not reach it on the merits. It is true the trial court in Oklahoma is charged with the responsibility to instruct the jury on any lesser included offenses warranted by law whether requested or not. *Hubbard v. State*, 817 P.2d 262, 263 (Okl.Cr.1991); *Penny v. State*, 765 P.2d 797, 800 (Okl.Cr.1988). However, he is not entitled to instructions on any lesser included offense when he defends against the charge by proclaiming his innocence. *Vaughn v. State*, 697 P.2d 963 (Okl.Cr.1985); *Campbell v. State*, 640 P.2d 1364 (Okl.Cr. 1982); *Wade v. State*, 556 P.2d 275 (Okl.Cr. 1976). At trial appellant testified his brother, Allen, gave him permission to drive the truck. We therefore do not reach the issue whether joyriding is a lesser included offense of unauthorized use.

Appellant also argues the State failed to prove the charge of unauthorized use for it did not prove appellant intended to deprive the Stallings company of possession. In support of this proposition Appellant cites his own testimony that his brother gave him permission to drive the truck. When, as here, the evidence is contradicted, the jury, as the trier of fact, determines who to believe. *Raymond v. State*, 717 P.2d 1147 (Okl. Cr.1986); *Renfro v. State*, 607 P.2d 703 (Okl. Cr.1980). Where the record supports the jury's verdict, the verdict will not be disturbed on appeal. We find the jury verdict is supported by the record.

### ISSUES CONCERNING THE SECOND STAGE OF TRIAL

■ Appellant raises four challenges to the sentencing stage of trial. First he argues the State failed to prove the former convictions which supported sentencing him as a habitual offender for unauthorized use of a motor vehicle. He complains the State merely offered judgment and sentence for each. Any requirement that the State do more was relieved by the Appellant himself when he took the stand during the first-stage and admitted the convictions upon cross-examination. *Jackson v. State*, 719 P.2d 1294 (Okl.Cr.1986); *Reed v. State*, 580 P.2d 159 (Okl.Cr.1978).

■ Appellant next mounts a two-pronged attack of the statutory aggravating circumstance, "to knowingly create a great risk of death to more than one person" found by the jury. See 21 O.S.1981, § 701.12(2). Appellant argues it is being applied in a vague and overbroad manner, and it is not supported by the evidence.

The challenge on the basis of being vague and overbroad has been considered and rejected by this Court as well as the United States Supreme Court. *Burrows v. State*, 640 P.2d 533 (Okl.Cr.1982); *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

■ Disregarding the plain language of the statute Appellant argues this aggravating circumstance should apply only if more than one person is murdered. This position is not supported by well established authority which requires no modification at this time. *See Ross v. State*, 717 P.2d 117 (Okl.Cr.1986) aff'd. 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988); *Dutton v. State*, 674 P.2d 1134 (Okl.Cr.1984), *cert. denied* 467 U.S. 1256, 104 S.Ct. 3548, 82 L.Ed.2d 850 (1984); *Smith v. State*, 727 P.2d 1366 (Okl.Cr.1986). These cases establish it is not the death of more than one person which supports this aggravating circumstance, but the defendant's acts that create the risk of death to another which are in close proximity, in terms of time, location and intent to the act of the killing itself.

■ In the present case, Appellant stabbed Mrs. Bush to death in the privacy of bin # 10. However, within a matter of minutes he went back inside the flea market and called to Mr. Newland. As soon as Mr. Newland reached bin # 10, Appellant at-

tacked and repeatedly stabbed him. The attacks upon Mrs. Bush and Mr. Newland were close in proximity, time, location and intent. The evidence is sufficient to support the jury's finding that the appellant's acts created a great risk of death to more than one person.

Appellant next challenges the constitutionality of the "continuing threat" aggravating circumstance. 21 O.S.1981, § 701.-12(7). He claims this aggravator, too, is being applied and reviewed in a vague and overbroad manner. Appellant claims the application of this aggravator has not served to distinguish those persons who may be sentenced to death from those who may not.

Valid capital sentencing demands the distinction. As the United States Supreme Court explained:

> A capital sentencing scheme must, in short, provide a "meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not."

> This means that if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty. Part of a State's responsibility in this regard is to define the crimes for which death may be the sentence in a way that obviates "standardless [sentencing] discretion."

*Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980) citing *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

The validity of the continuing threat aggravating circumstance has been established in Oklahoma. In *Battenfield v. State*, 816 P.2d 555 (Okl.Cr.1991) this Court stated:

> ... this aggravating circumstance is appropriate in cases where the evidence establishe[s] ... the defendant participated in other unrelated criminal acts, the nature of the crime exhibited the calloused nature of the defendant, and the defendant had previously been convicted of a crime involving violence.

On two occasions this Court has upheld the existence of this aggravating circumstance based solely upon evidence of the calloused nature of the crime itself. *See Workman v. State*, 824 P.2d 378 (Okl.Cr.1991); *Fisher v. State*, 736 P.2d 1003 (Okl.Cr.1987). Appellant argues this practice goes against the Tenth Circuit's pronouncement in *Cartwright v. Maynard*, 822 F.2d 1477 (10th Cir.1987). We disagree. In *Cartwright* the Tenth Circuit did not say that the manner of death itself could not support an aggravating circumstance. Rather the Tenth Circuit held this Court had not explained why one manner of killing may be found to be "especially heinous, atrocious or cruel" and another is not. *Id.* at 1490.

The defendant's attitude is critical to the determination of whether this defendant poses a continuing threat to society. A defendant who does not appreciate the gravity of taking another's life is more likely to do so again. *Fisher v. State*, 736 P.2d 1003 (Okl. Cr.1987); *Workman v. State*, 824 P.2d 378 (Okl.Cr.1991). Evidence relevant to prove this aggravator includes:

> ... any relevant evidence in conformance with the rules of evidence, ... including evidence from the crime itself, evidence of other crimes, admissions by the defendant of unadjudicated offenses or any other relevant evidence.

*Battenfield*, 816 P.2d at 566; *see also Williamson v. State*, 812 P.2d 384 (Okl.Cr.1991).

In the present case the State relied on evidence of a prior murder to support the aggravating circumstance. An eye-witness testified she saw the appellant gun down her unarmed brother when the appellant was fourteen years old. This evidence, together with the callous nature of the murder charged, as well as the immediate subsequent attack of Mr. Newlund is sufficient to support the jury's finding that Appellant would be a continuing threat to society.

Appellant's final challenge to the second stage of trial addresses the third and last aggravating circumstance found by the jury: "the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution". 21 O.S.1981, § 701.12(5). Ap-

pellant argues the evidence is insufficient to prove this factor. We agree.

▮▮▮▮▮▮ Previous cases make clear circumstantial evidence will support this aggravating circumstance. *Munson v. State,* 758 P.2d 324 (Okl.Cr.1988); *Stouffer v. State,* 738 P.2d 1349 (Okl.Cr.1987); *Rojem v. State,* 753 P.2d 359 (Okl.Cr.1988); *Smith v. State,* 737 P.2d 1206 (Okl.Cr.1987). To be sufficient the circumstantial evidence must rule out all other reasonable hypotheses. *Riley v. State,* 760 P.2d 198 (Okl.Cr.1988). In the present case the only evidence supporting this aggravator is the malice aforethought murder itself and the subsequent attack of Mr. Newlund. The State did not charge appellant with felony-murder, though it alluded to the fact appellant robbed Mrs. Bush. This weak speculation does not rise to the weight required by *Riley.* The finding by the jury that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution must be reversed.

▮▮▮▮ Having stricken the third aggravating circumstance, we must reweigh the remaining two aggravating circumstances against the mitigating evidence to determine if the death sentence is still valid. *Trice v. State,* 853 P.2d 203 (Okl.Cr.1993); *Stout v. State,* 817 P.2d 737 (Okl.Cr.1991); *Hayes v. State,* 845 P.2d 890 (Okl.Cr.1992). Reweighing ensures the thorough analysis required to implement the well-established Eighth Amendment requisites of individualized sentencing determination in a death penalty case. *Stringer v. Black,* — U.S. —, —, 112 S.Ct. 1130, 1136, 117 L.Ed.2d 367 (1992); *Richmand v. Lewis,* — U.S. —, —, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992). The death sentence must be stricken unless the Court can determine beyond a reasonable doubt that the jury would have imposed it absent the now invalidated aggravating circumstance. *Stout v. State,* 817 P.2d 737 (Okl. Cr.1991).

▮▮▮▮ Before us then, are the two valid aggravating circumstances: (1) the defendant knowingly created a great risk of death to more than one person; and (2) the probability the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

The evidence supporting the first aggravating circumstance is the stabbing murder of Betty Bush followed within minutes by the stabbing attack of Richard Newlund which left him hospitalized. The evidence supporting the second aggravating circumstance is the calloused nature of the repeated stabbing of Mrs. Bush and Mr. Newlund, the fact that the appellant launched knife attacks against these two people in rapid succession, and the fact that when the appellant was fourteen years old he gunned down an unarmed young man.

No second stage mitigation evidence was introduced and the defense made no opening statement or closing argument in the second stage of trial. Therefore, any evidence considered by the jury in mitigation came in during the first stage of trial. Evidence which arguably could be considered mitigating which was presented during the first stage of trial included the fact the appellant maintained a family relationship with his brother and father; he had a girl friend; and he showed generosity to both his girl friend and her mother. The State placed almost no emphasis at all on the aggravating factor which we have stricken: that the murder was committed to avoid lawful arrest and prosecution.

The jury was specifically instructed on the following circumstances which, if present, could be considered to be mitigating:

1. the defendant has no significant history of prior criminal activity;

2. the murder was committed while the defendant was under the influence of mental or emotional disturbance;

3. the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act;

4. the murder was committed under the circumstances which the defendant believed to provide a moral justification or extenuation for this conduct;

5. the defendant was an accomplice in a murder committed by another person and his participation in the homicidal act was relatively minor;

6. the defendant acted under duress or under the domination of another person. At the time of the murder, the capacity of the defendant to appreciate the criminality (wrongfulness) of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or intoxication; and

7. the age of the defendant at the time of the crime.

We have carefully and independently reviewed all the evidence, both mitigating and aggravating, in this case. The evidence supporting each of the two remaining aggravating factors is substantial. The mitigating evidence is sparse and meager. Upon reweighing we conclude beyond a reasonable doubt that the jury in this case would have sentenced the appellant to death had it not considered the invalid aggravator. *See, Stafford v. State*, 853 P.2d 223 (Okl.Cr.1993); *Stout v. State*, 817 P.2d 737 (Okl.Cr.1991).

Finally, the Court is charged by the Legislature to determine: (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether the evidence supports the jury's finding of the statutory aggravating circumstances found; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. 21 O.S.1981, § 701.13(C). We are satisfied neither passion, prejudice, or any other arbitrary factor is present in the record to undermine our confidence in the jury's verdict. Ample evidence supports the jury's finding of two aggravating factors: the defendant created a great risk of death to more than one person, and the defendant poses a continuing threat to society. Finally, upon review of capital cases, we find the sentence of death in this case is neither excessive or disproportionate. *See Pickens v. State*, 850 P.2d 328 (Okl.Cr.1993); *Salazar v. State*, 852 P.2d 729 (Okl.Cr.1993); *Castro v. State*, 745 P.2d 394 (Okl.Cr.1987), *reh'g denied*, 749 P.2d 1146 (Okl.Cr.1987), *cert. denied* 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1987); *Fisher v. State*, 736 P.2d 1003 (Okl.Cr.1987), *reh'g* 739 P.2d 523 (Okl.Cr.

1987). Judgment and sentence is **AFFIRMED.**

LUMPKIN, P.J., specially concurs.

JOHNSON, V.P.J., CHAPEL and STRUBHAR, JJ., concur.

LUMPKIN, Presiding Judge, specially concurring:

I concur with the Court's decision except for the finding of insufficient evidence to support the aggravator of "avoiding lawful arrest or prosecution". Although we do not have a statement as in *Banks v. State*, 701 P.2d 418 (Okl.Cr.1985), concerning Appellant's state of mind at the time of the murder, the circumstantial evidence is sufficient to support the aggravator. As the State notes, Appellant was a convicted felon. He attempted to disguise himself by folding up his eyelids. He killed the decedent after robbing her. Appellant had been at the flea market the day before the murder and dealt with a male sales person. Upon leaving the flea market, Appellant asked his brother if he had seen the "wad of money" the man inside the flea market was carrying. Appellant lured Mr. Newland back to the storage unit and stabbed Mr. Newland after he had robbed the decedent. The pickup Appellant was driving the day of the murder, he had taken, without permission to do so, from Stallings Construction Company. He tried unsuccessfully to get rid of the pickup, and eventually returned it to the yard of the Construction Co., wiping it clean of fingerprints. This evidence supports a finding that Appellant was attempting to do away with anyone or anything which could identify him as the perpetrator of Mrs. Bush's robbery and murder. *See Fox v. State*, 779 P.2d 562, 576 (Okl.Cr.1989).