**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J.  Fisher, Jr.                                    Elisabeth A. Shumaker
    Clerk                                                Chief Deputy Clerk

January 14, 1999


**TO:** ALL RECIPIENTS OF THE OPINION

**RE:** 97-6432, <u>Ross v. Ward</u>
        Filed on January 12, 1999


        The court's opinion filed in this matter on January 12, 1999, contains an incorrect citation.  On page 16 of the slip opinion, line 15, last sentence of the full paragraph, the citation to <u>United States v. Foster</u> should appear as follows:

<u>United States v. Foster</u>, 104 F.3d 1228, 1229 (10th Cir. 1997).

A copy of the corrected page 16 is attached.

                                            Sincerely,
                                            Patrick Fisher, Clerk of Court


                                            Keith Nelson
                                            Deputy Clerk



encl.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 12 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

BOBBY LYNN ROSS,

      Petitioner-Appellant,

vs.

RON WARD, WARDEN,
OKLAHOMA STATE
PENITENTIARY,

      Respondent-Appellee.

No. 97-6432

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OKLAHOMA
(D.C. No. CIV-96-1074-M)

---

David Autry, Oklahoma City, Oklahoma, for Petitioner-Appellant.

Sandra D. Howard, Assistant Attorney General (W.A. Drew Edmondson, Attorney General of Oklahoma, with her on the brief), Oklahoma City, Oklahoma, for Respondent-Appellee.

---

Before **ANDERSON**, **KELLY**, and **LUCERO**, Circuit Judges.

---

**KELLY**, Circuit Judge.

Petitioner Bobby Lynn Ross, an Oklahoma state prisoner sentenced to

**F I L E D**

death, appeals from the district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Our jurisdiction arises under 28 U.S.C. § 2253, and we affirm.

## Background

In the early morning hours of January 5, 1983, Mr. Ross and another man robbed Debra Jean Sandefur, the night clerk at the Los Cuartos Inn Motel in Elk City, Oklahoma. See Trial Transcript ("Tr.") at 563-83. During the robbery, Mr. Ross grabbed and pushed Ms. Sandefur and repeatedly threatened to kill her. See Tr. at 577-82; 596.

Before Mr. Ross left the scene, Sergeant Steven Mahan of the Elk City Police Department arrived on a routine check. After disarming Sergeant Mahan and ordering him to lie down, Mr. Ross shot him in the head three times at close range. Ms. Sandefur came to his aid as he lay on the ground, face down, bleeding profusely and breathing irregularly. See Tr. at 592-93. Elk City police officers arrived and, due to the obvious severity of his injuries, drove Sergeant Mahan to the hospital before the ambulance arrived. See Tr. at 628-32. At approximately 5:30 a.m. that same day, Sergeant Mahan was pronounced dead. See Tr. at 643.

At approximately 2:26 a.m., two Clinton police officers stopped the vehicle in which Mr. Ross and two other men were riding for having a defective taillight

and unsafe windshield.  See Tr. at 698-702.  All three men were frisked, arrested and read their Miranda rights.  See Tr. at 704-10, 723-24.  While frisking Mr. Ross, Officer Mark Lumpkin removed a Bauer .25 caliber automatic pistol from Mr. Ross' right front pants pocket.  See Tr. at 706-08.  Ballistics tests showed that the bullets removed from Sergeant Mahan's head were fired from the Bauer pistol taken from Mr. Ross.  See Tr. at 937.  The police also recovered the black jacket, black pants and black tennis shoes that Mr. Ross had been wearing during the robbery and murder.  A search of the vehicle revealed the two bank bags and bank deposits taken from the Los Cuartos Inn Motel, a Model 66 Smith & Wesson .357 magnum revolver with the same serial number as Officer Mahan's duty weapon and a loaded .25 caliber pistol.  See Tr. at 712-23.

A few hours later, Mr. Ross gave a taped statement to the police.  Mr. Ross initially admitted that he committed the robbery but denied any involvement in the murder, claiming an unidentified individual appeared at the scene and killed Sergeant Mahan.  See Tr. at 900-06.  However, when faced with accusations of lying, Mr. Ross admitted to Sergeant Mahan's killing, stating:  "Yes, sir, I did [commit the murder].  There wasn't no way of getting around it.  I had to live with it on my mind.  I couldn't live no longer with it on my mind.  Taking another man's life just for some money."  Tr. at 915-19; 921-22.

## Procedural History

In October 1983, Mr. Ross was convicted of first degree murder and robbery with firearms in the Roger Mills County District Court. Mr. Ross was sentenced to death for the murder conviction and to ninety-nine years imprisonment for the robbery conviction.

In support of the death penalty, the jury found the following five aggravating circumstances: (1) Mr. Ross knowingly created a great risk of death to more than one person; (2) the murder was especially henious, atrocious, or cruel; (3) the murder was committed to avoid or prevent a lawful arrest or prosecution; (4) there exists a probability that Mr. Ross would commit criminal acts of violence that would constitute a continuing threat to society; and (5) the victim of the murder was a peace officer. See Trial Ct. Rec. at 366.

On direct appeal, Mr. Ross' convictions and sentence were affirmed by the Oklahoma Court of Criminal Appeals. See Ross v. State, 717 P.2d 117 (Okla. Crim. App. 1986). Thereafter, Mr. Ross filed a petition for a writ of certiorari with the United States Supreme Court. The Court granted the petition on June 15, 1987 to determine whether the failure to excuse a potential juror for cause constituted a denial of Mr. Ross' Sixth and Fourteenth Amendment rights. The Court affirmed Mr. Ross' convictions and sentences on June 22, 1988. See Ross v. Oklahoma, 487 U.S. 81 (1988).

On October 24, 1988, Mr. Ross filed an Application for Post-Conviction

Relief in the District Court of Roger Mills County, Oklahoma. The state district court invalidated the "especially henious, atrocious, or cruel" aggravating circumstance, but still denied Mr. Ross relief, finding the death penalty the appropriate punishment. The Oklahoma Court of Criminal Appeals affirmed this denial of relief on April 6, 1994. See Ross v. State, 872 P.2d 940 (Okla. Crim. App. 1994). On October 31, 1994, the United States Supreme Court denied Mr. Ross' petition for a writ of certiorari. See Ross v. Oklahoma, 513 U.S. 970 (1994).

Mr. Ross filed a second Application for Post-Conviction relief in the District Court of Roger Mills County on December 30, 1994. The district court denied relief on March 24, 1995, and the Oklahoma Court of Criminal Appeals affirmed that denial on March 20, 1997. See Ross v. State, No. PC-95-294 (Okla. Crim. App. 1997).

Mr. Ross filed the present habeas petition in federal district court on December 31, 1996. The district court denied Mr. Ross' claim for relief on November 17, 1997. See Ross v. Ward, No. CIV-96-1074-M (W.D. Okla. 1997). However, the district court granted Mr. Ross a certificate of appealability on two issues: (1) the alleged denial of Mr. Ross' right to expert psychiatric or psychological assistance at both the guilt/innocence and penalty stages of trial, and (2) the alleged denial of Mr. Ross' right to an individualized sentencing

- 5 -

determination based upon constitutionally valid aggravating circumstances. See id.

Despite the limited certificate of appealability, Mr. Ross raises the following issues on appeal: (1) the trial court unconstitutionally denied Mr. Ross' motion for the appointment of expert psychiatric or psychological assistance with respect to both stages of trial; (2) he was deprived of effective assistance of counsel at both stages of the proceedings; (3) the aggravating circumstances used to support his death sentence were unconstitutionally interpreted and applied by the Oklahoma Court of Criminal Appeals and the evidence was insufficient to support them; (4) the death sentence is infirm under the Eighth Amendment because the "especially heinous, atrocious, or cruel" aggravating circumstance was vacated by the Oklahoma courts; (5) the prosecution failed to give notice of one of the aggravating circumstances; (6) the admission of evidence regarding an unadjudicated homicide during the penalty phase deprived Mr. Ross of a reliable sentencing determination; (7) prosecutorial misconduct occurred in both stages of Mr. Ross' trial; and (8) Mr. Ross was incompetent when tried and was denied a meaningful process to determine his compentency.

## Discussion

### A. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub L. 104-132, 110 Stat. 1214, amends the statutory provision which had required state prisoners to obtain a certificate of probable cause before appealing the denial of a habeas petition. The amended provision provides: "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. 2253(c)(2), and it "shall indicate which specific issue or issues satisfy the showing required by paragraph (2)." 28 U.S.C. § 2253(c)(3).

Here, the district court granted Mr. Ross a COA that was limited to two issues: (1) the alleged denial of Mr. Ross' right to expert assistance at both the guilt/innocence and penalty stages of trial, and (2) the alleged denial of Mr. Ross' right to an individualized sentencing determination based upon constitutionally valid aggravating circumstances. On appeal, Mr. Ross raises five other issues in his brief, all of which were addressed by the district court and for which the district court declined to grant a COA. We have reviewed the record before us, the district court's order, and Mr. Ross' arguments, and we conclude that Mr.

Ross has failed to make a substantial showing of the denial of a constitutional right as required under 28 U.S.C. § 2253(c)(2) for the issuance of an expanded COA. Thus, we will only consider the following issues: (1) whether the denial of Mr. Ross' motion for the appointment of expert psychiatric or psychological assistance with respect to both stages of trial deprived him of his constitutional rights; (2) whether the death sentence is unconstitutional because the aggravating circumstances used to support it were both unconstitutionally interpreted and applied by the Oklahoma Court of Criminal Appeals and insufficiently supported by the evidence; and (3) whether the death sentence is infirm under the Eight Amendment because the "especially heinous, atrocious, or cruel" aggravating circumstance was vacated by the Oklahoma courts.

Mr. Ross contends that the district court's COA includes the following issues: (1) whether the prosecution's failure to give notice of one of the aggravating circumstances constituted a violation of Mr. Ross' Eighth and Fourteenth Amendment rights; and (2) whether prosecutorial misconduct, particularly in the penalty phase, deprived Mr. Ross of his constitutional rights. We disagree. These issues do not constitute a denial of Mr. Ross' right to an individualized sentencing determination based upon constitutionally valid aggravating circumstances. Thus, because we are not granting an expanded COA, we will not consider these issues.

## B. Expert Psychiatric Assistance

Mr. Ross argues that the state trial court violated his constitutional rights by failing to grant his request for funds for an expert psychiatrist to assist him in both phases of trial. The alleged error was initially raised in Mr. Ross' first Application for Post-Conviction Relief. The Oklahoma Court of Criminal Appeals found that Mr Ross waived the claim pursuant to Okla. Stat. Ann. tit. 22, § 1086, because it could have been raised on direct appeal. See Ross, 872 P.2d at 941.

In the present habeas petition, the district court found that the claim is procedurally barred and that Mr. Ross failed to show cause as to why the procedural bar should be excused. See R. Doc. 19 at 3-13. Mr. Ross asserts that he could have shown that his sanity at the time of the offense would have been a significant factor at trial and that the "cause" for his failure to raise the issue was ineffective assistance of appellate counsel. We review the district court's legal conclusions de novo and its factual findings under the clearly erroneous standard. See Castro v. Oklahoma, 71 F.3d 1502, 1510 (10th Cir. 1995).

In Ake v. Oklahoma, 470 U.S. 68 (1985), the Supreme Court held:

[W]hen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.

Id. at 83.  However, a criminal defendant must offer "more than undeveloped assertions that the requested assistance would be beneficial."  Caldwell v. Mississippi, 472 U.S. 320, 323 n.1 (1985).  "General allegations supporting a request for court appointment of a psychiatric expert, without substantive supporting facts, and undeveloped assertions that psychiatric assistance would be beneficial to the defendant will not suffice to require the appointment of a psychiatrist to aid in the preparation of a criminal defense."  Liles v. Saffle, 945 F.2d 333, 336 (10th Cir. 1991).

Where federal claims are defaulted in state court pursuant to an independent and adequate state law, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Mr. Ross asserts as "cause" for his failure to raise this claim on direct review the ineffective assistance of appellate counsel.  Although, if proven, this would be adequate cause for his failure to raise the issue on appeal, we need not address that issue because Mr. Ross is unable to show prejudice.  See Moore v. Reynolds, 153 F.3d 1086, 1108-09 (10th Cir. 1998) (resolving similar issue by reaching prejudice while assuming that ineffective assistance of appellate counsel constituted "cause").

Where, as here, <u>Ake</u> was decided after trial but while the direct appeal was pending, the prejudice inquiry is whether the petitioner *could have* made a threshold showing under <u>Ake</u> that his sanity at the time of the offense would have been a significant factor at trial. <u>See</u> <u>Castro v. Oklahoma</u>, 71 F.3d at 1513; <u>see also</u> <u>Brewer v. Reynolds</u>, 51 F.3d 1519, 1528 n.18 (10th Cir. 1995). A defendant in a capital case may be entitled to psychiatric assistance during the both the guilt and sentencing phases of his trial. <u>See</u> <u>Ake</u>, 470 U.S. at 83-84. After carefully reviewing the record in this case, we find that Mr. Ross has not made the necessary threshold showing that he was entitled to expert assistance for either the guilt stage or the penalty stage.

The evidence does not support the contention that Mr. Ross *could have* made the necessary threshold showing. On January 25, 1983, Mr. Ross' counsel filed an Application for Commitment, where he wrote, without any supporting evidence or explanation: "[C]ause exists to believe that a doubt arises as to the present sanity of Bobby Lynn Ross" because he "presently is unable to distinguish between right and wrong;" "he does not have the present ability to understand the nature of the charges and proceedings brought against him;" and "he is presently unable to effectively and rationally assist in his defense." Trial Ct. Rec. at 24. On January 27, 1983, the trial court granted the application and Mr. Ross was admitted to Eastern State Hospital for examination. On February 18, 1983, Dr.

R.D. Garcia, Chief Forensic Psychiatrist of the Hospital determined that Mr. Ross "can fully comprehend the exact nature of the proceedings pending against him;" "would be able to adequately advise/assist legal counsel in the proper defense of his case;" "is not in need of psychiatric care/treatment . . . [and is] competent to stand trial at this time;" should not be considered mentally ill under Oklahoma law; and "[t]here has been no behavior to indicate to the staff that Bobby Lynn Ross could be considered as dangerous to himself and or others in society." Trial Ct. Rec. at 49-50. Thus, just months before the trial, Mr. Ross was found to have no mental problems that would indicate that his sanity would be a significant factor at either stage of his trial.

Mr. Ross has offered other post-conviction reports regarding his mental condition. These reports indicate that Mr. Ross has a low I.Q. and organic brain impairments. All of these tests were conducted years after Mr. Ross' conviction. These tests do not indicate that Mr. Ross could have shown his sanity *at the time of the offense* to be a significant factor at trial. See Liles, 945 F.2d at 336. In fact, all of the evidence, including Mr. Ross' confession given the same day as the murder and Dr. Garcia's report dated less than two months after the murder, indicate that Mr. Ross could not have shown that his sanity at the time of the offense was a significant factor in the guilt/innocence stage of his trial.

With regard to the sentencing phase of his trial, Mr. Ross contends that

- 12 -

because the state introduced evidence of his "continuing threat to society," the evidence of his mental condition constitutes a threshold showing of prejudice. Mr. Ross contends that, with a competent expert, he could have presented powerful evidence of his low intelligence and other organic brain damage, as well as other evidence that would have been significant in mitigation. Although <u>Ake</u> applies when the state introduces evidence of a defendant's continuing threat to society, <u>see</u> <u>Castro</u>, 71 F.3d at 1514-15, even if we were to conclude that Mr. Ross could have made a threshold showing that his mental condition would have been a significant mitigating factor, we find that the state court's denial of expert funds to employ an expert was harmless error. <u>See</u> <u>Brewer</u>, 51 F.3d at 1529 (finding that the denial of an expert in violation of <u>Ake</u> is subject to harmless error analysis). We find that the mitigating evidence that could have resulted from any psychiatric evaluation would not have been sufficient to have influenced the jury's recommendation of the death penalty, in light of the jury's findings with regard to the other three aggravating circumstances.

## C. <u>Constitutionality of Aggravating Circumstances</u>

Under Oklahoma law, a separate sentencing proceeding is conducted after a defendant is convicted of first degree murder to determine whether the defendant should be sentenced to life imprisonment or death. <u>See</u> Okla. Stat. Ann. tit. 21 §

701.10. During the sentencing proceeding, evidence may be presented as to any mitigating circumstances or aggravating circumstances enumerated in § 701.7 to § 701.16 of Title 21. See id. A jury may only impose the death penalty when it unanimously finds at least one of the statutory aggravating circumstances beyond a reasonable doubt and concludes that those aggravating circumstances are not outweighed by any mitigating circumstances. See Okla. Stat. Ann. tit. 21 § 701.11.

In support of Mr. Ross' death sentence, the jury found the following five aggravating circumstances: (1) Mr. Ross knowingly created a great risk of death to more than one person; (2) the murder was especially henious, atrocious, or cruel; (3) the murder was committed to avoid or prevent a lawful arrest or prosecution; (4) there exists a probability that Mr. Ross would commit criminal acts of violence that would constitute a continuing threat to society; and (5) the victim of the murder was a peace officer. See Trial Ct. Rec. at 366. In 1992, the Oklahoma district court invalidated the "especially heinous" aggravator but, in reweighing the remaining factors, found beyond a reasonable doubt that the death penalty would have been given. The Oklahoma Court of Criminal Appeals affirmed this finding. See Ross, 872 P.2d at 941.

Mr. Ross claims that both the "continuing threat" aggravator and the "great risk of death" aggravator are unconstitutionally vague and overbroad as applied in

Oklahoma and that the evidence was legally insufficient to support them.  Mr.

Ross also contends that, because the "especially henious, atrocious, or cruel"

aggravating circumstance was vacated by the Oklahoma courts, the death sentence

is infirm under the Eighth and Fourteenth Amendments and that the reweighing of

the remaining aggravating circumstances was inadequately conducted.

An aggravating circumstance is constitutional so long as it: (1) "[does] not

apply to every defendant convicted of murder; it must apply only to a subclass of

defendants convicted of murder" and (2) the aggravating circumstance is not

unconstitutionally vague.  Tuilaepa v. California, 512 U.S. 967, 972 (1994).  We

review the constitutionality of aggravating circumstances de novo, see Cooks v.

Ward, 1998 WL 869691, at *4 (10th Cir. Dec. 15 1998), and find no

constitutional error that warrants habeas relief.


1. Continuing Threat Aggravating Circumstance

Mr. Ross contends that the "continuing threat" aggravating circumstance, as

applied in Oklahoma, is unconstitutionally vague and overbroad; is not

sufficiently limited in scope because it can exist as to almost any murder; and was

not founded on sufficient evidence in this case.  In support of this claim, he relies

on the reasoning of Williamson v. Reynolds, 904 F. Supp. 1529 (E.D. Okla.

1995), where a federal district court ruled that the continuing threat aggravating

circumstance was unconstitutionally vague and overbroad as interpreted and applied in Oklahoma.

Recently, this court has rejected the reasoning of <u>Williamson</u> and held that the continuing threat aggravator as applied in the Oklahoma sentencing scheme does not violate the Eighth Amendment. <u>See</u> <u>Castro v. Ward</u>, 138 F.3d 810, 816 (10th Cir.), <u>cert. denied</u>, 119 S. Ct. 422 (1998); <u>Nguyen v. Reynolds</u>, 131 F.3d 1340, 1352-54 (10th Cir. 1997), <u>cert. denied</u>, 119 S. Ct. 128 (1998). This court specifically found that the continuing threat aggravator is not "applicable to every defendant convicted of murder in the first degree." <u>See</u> <u>Nguyen</u>, 131 F.3d at 1354. Although Mr. Ross asks us not to follow this reasoning, we are bound by these decisions. <u>See</u> <u>United States v. Foster</u>, 104 F.3d 1228, 1229 (10th Cir. 1997).

Mr. Ross contends that the jury may have relied on evidence of other crimes that was not properly admitted in finding this aggravating circumstance. Specifically, he asserts that it was unconstitutional for the jury to hear evidence about an unadjudicated murder in Texas during the sentencing stage. This contention is directly contrary to our decision in <u>Hatch v. Oklahoma</u>, 58 F.3d 1447, 1465 (10th Cir. 1995), where this court held that "the admission of evidence of unadjudicated offenses at a sentencing proceeding does not violate due process."

- 16 -

After a thorough review of the record before us, we find that there is sufficient evidence to support the jury's finding of the continuing threat aggravating circumstance. Thus, Mr. Ross' claims regarding the continuing threat aggravator are without merit.

### 2. Great Risk of Death to More than One Person

Mr. Ross claims that the Oklahoma court applied and interpreted the "great risk of death to more than one person" aggravating circumstance in a vague and overbroad manner. In addition, Mr. Ross argues that there is no evidence that anyone other than Sergeant Mahan was at a great risk of death.

We have explicitly held that the "great risk of death" aggravator is constitutional under the Eighth Amendment. See Brecheen v. Reynolds, 41 F.3d 1343, 1360 (10th Cir. 1994). This aggravator "cannot reasonably be said to apply to every defendant convicted of murder"--it "only applies to a defined and limited subclass of murderers, namely, those where the defendant's conduct not only resulted in murder, but also posed a significant risk of death to other individuals." Id. at 1360.

The facts underlying Mr. Ross' case meet the requirement that the defendant created a risk of death to another who was in close proximity to the killing itself in terms of time, location, and intent. See Snow v. State, 876 P.2d

291, 297 (Okla. Crim. App. 1994). Ms. Sandefur testified that although she never saw Mr. Ross' weapon, she was told that she would be shot and killed if she did not obey Mr. Ross' commands. Ms. Sandefur did believe that her life was in danger, and Mr. Ross did have a deadly weapon that he used moments after the robbery. Therefore, we find that a jury could have reasonably concluded that Mr. Ross' actions caused a great risk of death to more than one person.

### 3. Appropriateness of Reweighing After Invalidating the Especially Heinous, Atrocious, or Cruel Aggravator

Mr. Ross contends that, upon invalidating the "especially heinous, atrocious, or cruel" aggravating circumstance, the Oklahoma courts' refusal to set aside the death penalty after reweighing the aggravating and mitigating circumstances was unconstitutional. Mr. Ross also argues not only that it was improper to reweigh the remaining aggravating circumstances, but also that the harmless error analysis conducted in this case does not meet federal constitutional standards.

In Clemons v. Mississippi, 494 U.S. 738, 745 (1990), the Supreme Court held that a defendant's constitutional rights are not "infringed where an appellate court invalidates one of two or more aggravating circumstances found by the jury, but affirms the death sentence after itself finding that the one or more valid remaining aggravating factors outweigh the mitigating evidence." Thus, in light

of Clemons, the Oklahoma district and appellate courts did not violate Mr. Ross' constitutional rights by deciding to reweigh the aggravating and mitigating circumstances.

Mr. Ross contends that the reweighing conducted by the Oklahoma district court and Oklahoma Court of Criminal Appeals was inadequate because it failed to adequately discuss the reasons for upholding the death penalty given the invalid aggravating circumstance. He claims that the reweighing by the state district court was "extremely brief and conclusory, failing entirely to list and discuss the evidence in mitigation, the emphasis placed by the prosecutor on the infirm aggravating circumstance, or any other considerations crucial to a reweighing process" and that the Court of Criminal Appeals affirmed without conducting any analysis. Pet. Brief at 34. Mr. Ross relies on Stringer v. Black, 503 U.S. 222 (1992), and Richmond v. Lewis, 506 U.S. 40 (1992) to support his argument.

We disagree with Mr. Ross' interpretations of Stringer and Richmond. In Stringer the Supreme Court emphasized the necessity of "close appellate scrutiny of the import and effect of invalid aggravating factors." Stringer, 503 U.S. at 230. Stringer only requires that the state appellate court either conduct a harmless error analysis or independently reweigh the aggravating and mitigating evidence--it does not require the court "to discuss the effect the invalid

aggravating factor had on the jury's original sentencing decision." Moore v. Reynolds, 153 F.3d 1086, 1115 (10th Cir. 1998) (discussing Stringer). In Richmond, the Court stressed the need to determine whether the state court actually reweighed the remaining aggravating and mitigating circumstances. See Richmond, 506 U.S. at 48. The Court did not, as Mr. Ross suggests, hold that the state court unconstitutionally reweighed the remaining factors by not mentioning mitigating evidence. The reweighing in Richmond was unconstitutional because the state court failed to conduct any reweighing analysis whatsoever. See id. at 49 (finding state Supreme court justices utilized an "automatic affirmance rule" rather than actually reweighing the factors).

We review de novo the Oklahoma courts' decision to reweigh the aggravating and mitigating factors to determine whether Mr. Ross was afforded "an individualized and reliable sentencing determination based on [his] circumstances, his background, and the crime." Clemons, 494 U.S. at 749; see Stafford v. Saffle, 34 F.3d 1557, 1569 (10th Cir. 1994). We review the court's factual findings regarding the aggravating and mitigating factors under the "rational factfinder" standard, viewing the evidence in the light most favorable to the prosecution. Lewis v. Jeffers, 497 U.S. 764, 781 (1990); see Stafford, 34 F.3d at 1569.

"[T]he United States Supreme Court 'has never specified the degree of

- 20 -

clarity with which a state appellate court must reweigh in order to cure an otherwise invalid death sentence.'" Correll v. Stewart, 137 F.3d 1404, 1418 (9th Cir.), cert. denied, 119 S. Ct. 450; 465 (1998) (quoting Jeffers v. Lewis, 38 F.3d 411, 414 (9th Cir. 1994)).  The Court has not translated its call for "close appellate scrutiny of the import and effect of invalid aggravating factors," Stringer, 503 U.S. at 230, into a clear set of requirements for a constitutional reweighing analysis.   Thus, we must only determine that the Oklahoma courts actually reweighed so that the aggravating circumstance provided "principled guidance," Richmond, 506 U.S. at 46, and not necessarily a *"conclusive* justification" for the death penalty." Id. at 49.

Applying this standard, we find that the reweighing was consistent with Clemons and its progeny and that the Oklahoma courts' factual findings as to the four remaining aggravating circumstances and the mitigating circumstances meet the rational factfinder standard.  Therefore, the reweighing conducted by the Oklahoma district court and affirmed by the Oklahoma Court of Criminal Appeals is sustained.

"Our duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case." Burger v. Kemp, 483 U.S. 776, 785 (1987).  Having given careful consideration to Mr. Ross' claims, we find no constitutional error and affirm the denial of Mr. Ross' petition for a writ of

habeas corpus.

97-6432, <u>Bobby Lynn Ross v. Ron Ward, Warden</u>

Kelly, Circuit Judge, Concurring.

In my view, the certificate of appealability procedures followed in this case deserve further comment. No specific request for an expanded COA was filed and the cover of Mr. Ross' brief-in-chief did not indicate that such a request was being made. Only in the concluding sentence of each section of his brief-in-chief does Mr. Ross request a COA on each of the issues for which the district court declined to grant a COA. In its answer brief, respondent only addressed the three issues within the scope of the district court's COA.

This court does not hear and decide issues on which a COA has not been granted. See <u>Lackey v. Johnson</u>, 116 F.3d 149, 151 (5th Cir. 1997) ("A plain reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone."); <u>see also</u> <u>Ramsey v. Bowersox</u>, 149 F.3d 749, 759 (8th Cir. 1998) ("[A]ppellate review of the habeas denial is limited to the specified issues" in the COA.); <u>Murray v. United States</u>, 145 F.3d 1249, 1250 (11th Cir. 1998) (following <u>Lackey</u> and concluding that "there would be little point in Congress requiring specification of the issues for which a COA was granted if appellate review was not limited to the issues specified").

Federal Rule of Appellate Procedure 22(b) provides that:

- 23 -

> If the district judge has denied the certificate, the applicant for the writ may then request issuance of the certificate by a circuit judge. If such a request is addressed to the court of appeals, it shall be deemed addressed to the judges thereof and shall be considered by a circuit judge or judges as the court deems appropriate. If no express request for a certificate is filed, the notice of appeal shall be deemed to constitute a request addressed to the judges of the court of appeals.

In non-capital cases, our rules provide that we may require a separate application for a COA on a form provided by the court. See 10th Cir. R. 22.1(A) (eff. Jan. 1, 1999); see also 10th Cir. R. 22.1 (eff. Jan. 1, 1996) (analogous rule for a certificate of probable cause), supplemented by Emergency General Order (10th Cir. Oct. 1, 1996). The purpose of this rule is to provide "information that can help the court decide whether a [COA] should be issued." 10th Cir. R. 22.1(A). In capital cases, particularly where an execution date has been scheduled, we have not required a separate request for a COA, see 10th Cir. R. 22.2(C)(1); see also 10th Cir. 22.2.3 (eff. Jan. 1, 1996) (analogous rule for a certificate of probable cause).

Where the district court has granted a COA in a capital case on some issues, but not on others, it seems to me that it is preferable for a petitioner to include a separate request for an expanded COA with his filing or, at the very least, to indicate that an expanded COA is being requested. This would alert the court of appeals of the need to rule on such a request so that any briefing beyond the issues identified in the district court's COA may be briefed by a respondent.

A respondent should not be required to and indeed is prohibited from addressing issues for which a COA will not issue. <u>See</u> Emergency General Order (10th Cir. Oct. 1, 1996). Additionally, a respondent has a right to brief those issues on which this court grants a COA. With this comment, I join the court's opinion.