2004 OK CR 10

**Rocky Dale SNOW, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. PCD 2002–979.**

Court of Criminal Appeals of Oklahoma.

Feb. 19, 2004.

**ORDER REMANDING TO THE DISTRICT COURT FOR JURY DETERMINATION ON THE ISSUE OF MENTAL RETARDATION**

¶ 1 Appellant, Rocky Dale Snow was tried by jury and convicted of Unauthorized Use of a Motor Vehicle, Assault and Battery With Intent to Kill and Murder in the First Degree, after former conviction of two or more felonies, in Pontotoc County District Court, Case No. CRF–88–210. The trial court sentenced Petitioner, in accordance with the jury verdict, to sentences of twenty (20)

---

4.  488 P.2d at 618.

years, ninety-nine (99) years, and death respectively.

¶ 2 This Court affirmed Petitioner's convictions and sentences in *Snow v. State,* 1994 OK CR 39, 876 P.2d 291, and subsequently denied his petition for rehearing.[1] The United States Supreme Court denied Petitioner's petition for writ of certiorari on February 21, 1995. *Snow v. Oklahoma,* 513 U.S. 1179, 115 S.Ct. 1165, 130 L.Ed.2d 1120 (1995). On November 10, 1999, this Court affirmed the district courts denial of Snow's initial application for post-conviction relief. (Court of Criminal Appeals Case No. PCD–1997–1350). This Court denied, in part, his second application for post-conviction relief and remanded the case for an evidentiary hearing on his claim of mental retardation under the current styled case.

¶ 3 Petitioner's evidentiary hearing was held on November 5, 2003 in the District Court of Pontotoc County, before the Honorable Gary Snow, District Judge.[2] On December 1, 2003, Judge Snow submitted findings of fact to this Court. Thereafter, the parties filed a brief outlining their positions on this issue.

¶ 4 In *Murphy v. State,* 2002 OK CR 32, ¶ 31, 54 P.3d 556, 567–68 (*Murphy I* ) this Court set forth a three-prong definition of mental retardation. Along that line we instructed the District Court to determine whether Petitioner had raised "sufficient evidence at trial, on appeal, or at the evidentiary hearing of his mental retardation for the issue of mental retardation to be decided as a question of fact by a jury trial at a resentencing hearing." *Id.,* 2002 OK CR 32, ¶ 39, 54 P.3d at 570.

¶ 5 As *Murphy* explained, sufficient evidence means enough evidence to create a fact question on the issue of whether Petitioner is mentally retarded according to *Murphy* 's definition. 2002 OK CR 32, ¶ 39, 54 P.3d at 570, n. 27. Furthermore, as *Murphy II,* 2003 OK CR 6, ¶ 12, 66 P.3d 456, 458, explained:

"[S]ufficient evidence" is essentially the legal equivalent of a defendant making a *prima facie* showing of mental retardation with his or her evidence. *Prima facie* evidence has been defined as "[e]vidence good and sufficient on its face; such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient."

With these understandings, we now turn to the instant case.

¶ 6 The District Court's findings with respect to Petitioner's evidentiary hearing and claim of mental retardation are thorough and well explained. It is clear the trial court sifted through the evidence and made well-reasoned legal and factual determinations regarding the evidence presented and the three *Murphy* prongs. The trial court expresses frustration over the bright line rule that there must be evidence of a contemporary I.Q. test resulting in a score of 70 or below. This number was established based on definitions of mental retardation established by the American Association of Mental Retardation (AAMR) and the American Psychiatric Association (APA), and language in the *Atkins* opinion. *See Murphy I,* 54 P.3d at 567–68. The threshold barrier was expressed in *Murphy I* as,

no person shall be eligible to be considered mentally retarded unless he or she has an intelligence quotient of seventy or below, as reflected by at least one scientifically recognized, scientifically approved, and contemporary intelligent quotient test.

*Murphy,* 54 P.3d at 568 [footnote omitted]. We defined contemporary as "the intelligent quotient test registering seventy or below was administered some time after the capital crime was committed or is one [a test] that may be understood by contemporary standards." *Id.* at n. 21. The trial court expresses a lack of understanding of this later phrase and indicates that there is no test registering seventy or below after the com-

---

1. Rehearing denied in *Snow v. State,* 1994 OK CR 50, 879 P.2d 150.

2. Judge Snow, District Judge of Seminole County was presiding by special appointment. It was noted that he is not related to Appellant.

mission of the crime. Therefore, the trial court concludes that Petitioner is not eligible for a jury trial on the issue of mental retardation.

¶ 7 The definition of contemporary simply means that a defendant must have an I.Q. test resulting in a score of seventy or less or an I.Q. test that meets an equivalent standard under contemporary scientific methods.

¶ 8 In this case, Petitioner has an I.Q. test resulting in a score of 68, taken as a group test, when he was in the third grade. This test was a group test, and the trial court states, "[t]his test score does not meet the *Murphy v. State, supra* definition of contemporary I.Q. test in that it was not administered sometime after the capital crime was committed." The trial court also found that based on the other prongs, a jury could find,

> "that Snow functions at a significantly subaverage intellectual level that substantially limited his ability to understand and process information, to communicate, to learn from experience or mistakes, to engage in logical reasoning, to control impulses, and to understand reactions of others."

The trial court also found that jury could find that his sub-average intellectual level manifested itself before the age of 18 and his sub-average intellectual level is accompanied by significant limitations in adaptive functioning in all the levels identified in *Murphy.*

¶ 9 Regardless of the trial court's conclusion that Petitioner has not raised sufficient evidence of his mental retardation, we do not determine whether the record supports the conclusion.

> [W]e simply ask whether or not a fact question has been raised regarding the issue of mental retardation under this record. Or, stated differently, has Petitioner made a *prima facie* showing of mental retardation with his evidence—such a showing that, if not rebutted, would establish his claim.
> We recognize that trial courts have been struggling to a certain degree to understand their role in these remanded evidentiary hearings. Accordingly, we want to be clear that the focal question in these remanded evidentiary hearings on mental retardation does not require adjudication

to the extent provided by the District Court's meticulous findings. The *Murphy* remanded evidentiary hearing is a factfinding mission, not a mini-trial. It is an opportunity . . . to bring all their evidence together, and to supplement it where necessary. Where a fact question is found, a jury then steps in to determine the issue at hand.

*Martinez v. State,* 2003 OK CR 25, ¶¶ 9–10, 80 P.3d 142, 144. That is the case here. We find sufficient admissible evidence exists in the record to create a fact question regarding all three prongs of the *Murphy* definition. Accordingly, this matter must be remanded to the District Court of Pontotoc County for a jury determination on the issue of mental retardation.

¶ 10 Regarding the remanded jury determination of the issue of mental retardation, the parties are hereby instructed to follow the procedures outlined by this Court in *Lambert v. State,* 2003 OK CR 11, 71 P.3d 30 and *Salazar v. State,* 2004 OK CR 4, 84 P.3d 764, 75 OBJ 405 (Jan. 29, 2004).

¶ 11 This case is therefore **REMANDED** to the District Court of Pontotoc County for a jury trial, unless waived, on the issue of Petitioner's claim of mental retardation, in accordance with those procedures outlined in *Lambert.* The trial shall be held within one hundred twenty (120) days of this Order. The trial court shall file findings of fact and conclusions of law, including the jury's determination and any sentencing disposition, in this Court within thirty (30) days from the date the jury's verdict is entered. The court reporter shall prepare and file the transcripts of the hearings within thirty (30) days from the date of the jury hearing. The Clerk of the District Court shall prepare and file the district court record, including the transcripts with in forty-five (45) days from the date of the jury hearing. Thereafter, the parties may file a supplemental brief in response to the determination on mental retardation, not to exceed twenty pages, concerning the issue of mental retardation within twenty (20) days from the filing of the trial court's findings of fact and conclusions of law

or the filing of the transcripts of the hearing, whichever is later.

¶ 12 **IT IS SO ORDERED.**

¶ 13 **WITNESS OUR HANDS AND THE SEAL OF THIS COURT** this 19th day of February, 2004.

/s/ Charles A. Johnson
CHARLES A. JOHNSON, Presiding Judge

/s/ Steve Lile
STEVE LILE, Vice Presiding Judge

/s/ Gary L. Lumpkin
GARY L. LUMPKIN, Judge

/s/ Charles S. Chapel
CHARLES S. CHAPEL, Judge

/s/ Reta M. Strubhar
RETA M. STRUBHAR, Judge